[Brown, Admr. v. Louisville & Nashville Railroad Co.

# Brown, Admr. v. Louisville and Nashville Railroad Co.

*Action against Railroad Company for Damages, by Administrator of Person Killed.*

1. *Contributory negligence in violation of rule; there must be knowledge thereof; averments of knowledge.*—Since negligence can only be affirmed in respect of circumstances and conditions known to the party to whom it is imputed, knowledge of a rule of the employer on the part of a complaining employé is necessary to the imputation of contributory negligence in the doing of an act violative of its provisions; and a plea setting up such contributory negligence, which fails to aver that the plaintiff had knowledge of the rule alleged to have been violated, is demurrable.

2. *Employer waiving observance of rule by requiring employé to perform service necessitating its violation.*—Where an act of an employé is not necessarily negligent in itself, but only because prohibited by a rule of the employer, if the duty which the employé owes to the employer cannot be performed except in doing the act, necessary to be done, in the mode prohibited by the rule, the employer is held to have waived the observance of the rule in respect to the performance of such duty imposed on the employé.

3. *Employers' Liability Act; when fireman is a "person in charge or control of an engine."*—When it is shown to be the duty of the fireman to receive signals from a switchmen and transmit them to the engineer, he may be said to be, for that purpose, a person in charge of the engine within the meaning of subdivision 5 of the Employers' Liability Act (Code, § 2590).

4. *Same; sufficiency of complaint.*—The duty to recieve signals from a switchman and transmit them to the engineer not being one universally springing from the relation of fireman, but dependent

upon particular facts, and the existence of these facts being essential to investing the fireman with the responsibilities of a person in charge of the locomotive, the facts themselves must appear in a complaint counting on the negligence of a fireman in this regard, or the conclusion from them, that such was the duty of the fireman in the particular case, must be therein averred.

5. *Same; competency of evidence.*—Where the complaint, in an action by the administrator of a deceased employé to recover damages for injuries resulting in the death of the intestate, counts upon the negligence of a fireman in failing to perform the duty imposed upon him of warning the engineer of the deceased's peril, evidence going to show that the duty of keeping a lookout and informing the engineer of the situation with which they were dealing was upon the fireman, should be received.

6. *Question asked a witness by the court; neither party can complain of its withdrawal by the court.*—Where the court asks a witness a question, the withdrawal of such question by the court is not a matter of of which either party can complain.

APPEAL from the Circuit Court of Mobile.

Tried before the HON. J. R. TYSON.

This action was brought by Henry H. Brown, as administrator of the estate of James L. Brown, deceased, on October 15, 1891, against the Louisville and Nashville Railroad Company, to recover damages for personal injuries resulting in the death of the plaintiff's intestate, alleged to have been caused by the negligence of defendant's employés.

The complaint as originally filed contained five counts. It was subsequently amended by the addition of 11 other counts. The rulings in reference to some of the counts of the original complaint and amended complaint are not called in question, and such counts are not referred to in the following statement or facts. The 7th count of the complaint, after its prefatory averments that the defendant employed the plaintiff's intestate to serve upon one of its trains in the capacity of a brakeman, then averred that the defendant "did also hire and employ another person whose name is unknown to plaintiff, but to whom the defendant entrusted the charge and control of its locomotive or engine, and the said James L. Brown was killed by reason of the negligence of such person in this, that while the said James L. Brown was engaged in uncoupling a car from the tender attached to said engine, such person, so in charge of said engine, negligently undertook to make a running switch, and

in doing so negligently ran said engine and tender back
upon said James L. Brown, so as to catch, crush and kill
him, to the great damage of plaintiff." To this count of
the complaint the defendant pleaded not guilty, and the
following special plea: (2.) "And for further plea or
answer to the whole of said complaint, as amended, and
to each count thereof, defendant says that at and prior
to the time of the injury to plaintiff's intestate, it had
promulgated and had in force a rule, part of which is as
follows: * * * * *'Stepping upon the front of ap-
proaching engine; jumping on or off train or engine
moving at a high rate of speed; getting between cars
while in motion to uncouple them, and all similar im-
prudences, are dangerous and in violation of duty.' Of
which said rule plaintiff's intestate had notice, and de-
fendant avers that plaintiff's intestate did go in between
the tender of an engine and the car to which it was
coupled while the same was in motion, in violation of
said rule, thereby contributing directly and proximately
to his own injury and death." To the second plea of
the defendant the plaintiff demurred on the following
grounds: "(1.) Because it does not appear from said
plea that the plaintiff's said intestate had knowledge of
said rule of the defendant before his said injury. (2.)
Because it does not appear that said rule is reasonable
and practicable, and it does not appear that the work
which was required of the plaintiff's intestate by the de-
fendant under his said employment could have been
done in compliance with said rule. (3.) Because no
facts are averred therein showing that the plaintiff's said
intestate got between cars while in motion, or otherwise
violated said rule." The demurrer to the second plea
was overruled, and thereupon the plaintiff filed several
replications to said plea, among which was the follow-
ing: "3d. For further replication to the 2d plea by
the defendant pleaded, plaintiff says that it was not
practicable to perform the duties of said employment
without violating the rule by the defendant pleaded."
To the plaintiff's third replication to the defendant's sec-
ond plea to the seventh count of the complaint the de-
fendant demurred on the following grounds: "(1.)
Because said replication only states the conclusion of the
pleader. (2.) Because no fact or circumstance is stat-
ed showing why it was not practicable to perform the

duties of the employment of plaintiff's intestate without violating the said rule." This demurrer to the third replication was sustained. Thereafter the plaintiff amended his complaint by adding 10 additional counts. The 8th, 10th, 12th, 13th and 14th counts aver that the injury was caused to the plaintiff by reason of the negligence of the engineer, to whom was entrusted the charge and control of his locomotive, in moving the engine backwards without exercising reasonable care to ascertain the whereabouts of the plaintiff's intestate with certainty, and that while he knew that plaintiff's intestate was probably between the engine and car, he nevertheless negligently continued to run his engine back, towards and upon the plaintiff's intestate, with force and violence and thereby killed him. In the 9th, 11th, 15th and 16th counts of the complaint, there were the prefatory averments that the plaintiff's intestate had been employed by the defendant as a brakeman upon one of its trains, which averments were followed by the allegations which are copied below. These counts, as originally filed, were without the averments which are italicized, such averments being afterwards added by amendment. (9.) And the defendant "did also hire and employ another person whose name is unknown to the plaintiff, but to whom the defendant entrusted the duty of a fireman upon said locomotive or engine, and the said James L. Brown was killed by reason of the fact that while he, the said James L. Brown, was upon the railroad track between said engine and said car, engaged in the performance of his duties in uncoupling said engine from said car, and while he, the said fireman, knew that said James L. Brown was in such perilous position, and while he knew that the said engineer was moving or was about to move said engine towards the same James L. Brown, with such force and violence as to greatly endanger his life, he, the said fireman, failed to notify the said engineer of the said perilous position of the said James L. Brown, *although it was his duty as such fireman, to have so notified said engineer*, and by reason of said failure on the part of the said fireman, said engineer ran said train back upon said James L. Brown with such force and violence as to throw him to the ground, and kill him, to the great damage of the plaintiff." (11.) And the defendant "did also hire.

and employ another person by the name of McDonald, to whom it entrusted the duties of fireman upon its said engine, and that said James L. Brown was killed by reason of the fact that while he was about to go upon said railroad track, between said engine and car, for the purpose of uncoupling them, as was his duty, said fireman negligently allowed said engineer to remain unaware of the fact that said Brown was about to go between said engine and car, although he, said fireman, well knew said fact, *although it was his duty as such fireman, to have informed said engineer. of such perilous position of said James L. Brown, and* by reason of all of which said engineer backed his said train against the said Brown and killed him, to plaintiff's damage, as aforesaid." (15.) And the defendant "did so hire and employ another person by the name of McDonald, to whom it entrusted the duties of fireman upon said engine, and the plaintiff avers that the said James L. Brown was killed by reason ot the fact that while he was between said engine and car in the performance of his duty, and for the purpose of uncoupling them, the said McDonald well knowing that the engineer in charge of said engine was not aware of said perilous position of said Brown, nevertheless failed to inform the said engineer of the said perilous position of said Brown, *although it was his duty, as such fireman, to have informed said engineer*, by reason of which the said engineer backed said train against said Brown and killed him, to plaintiff's damage, as aforesaid." (16.) And the defendant "did also hire and employ another person by the name of McDonald, to whom it entrusted the duties of fireman upon said engine, and the plaintiff avers that the said James L. Brown was killed by reason of the fact that although the said Brown was in a perilous position in the performance of his duty, to-wit, between said engine and said car, and although this fact was unknown to the engineer and was well known to said fireman, and although said fireman knew that it would greatly imperil the life of said Brown for the engineer to continue to back said train, nevertheless failed to inform his said engineer of the said perilous position of said Brown, *although it was his duty as such fireman to have informed said engineer,* by reason of which said engineer backed said train against said Brown and killed him, to the plaintiff's damage, as afore-

said." The demurrers to the 8th, 10th, 11th, 12th, 13th and 14th counts were overruled, and it is not, therefore, necessary to notice them. To the 9th, 11th, 15th and 16th counts the defendant demurred separately upon the following grounds: "1st. Because said counts seek a recovery for the negligence of a fellow servant. 2d. Because the fireman, whose negligence is charged to have been the cause of the accident, is not shown to have had charge or control of any signal points, locomotive, engine, switch, car or train, at the time of said injury. 3d. Because the failure of the fireman to notify the engineer of the peril of the plaintiff's intestate, does not render the defendant liable for accident. 4th. Because said counts are a departure from the original complaint. 5th. Because the facts stated in said counts disclose no cause of action against the defendant." These demurrers to the 9th, 11th, 15th and 16th counts of the complaint were sustained to each of said counts; and thereupon the plaintiff amended each of said counts by inserting therein the allegations which are italicized, as shown in each of the counts copied above. Upon these counts, as thus amended, as well as upon the other counts of the complaint, issue was taken.

Upon the hearing of the cause, as shown by the bill of exceptions, the plaintiff introduced in evidence one John McDonald, who testified that on November 6, 1890, he was a fireman on the engine of a train of the defendant, which was on its way from Mobile to Montgomery, and that at a station along the defendant's road called Bolling, while preparations were being made to switch one of the cars of said train from the main track to a side track, James L. Brown, the plaintiff's intestate, was killed; that in the performance of his duty as fireman he was, at the time of the accident, looking down the track for signals and obstructions; that there was attached to the tender of the engine one car, which it was proposed to put upon a side track; that James L. Brown, the plaintiff's intestate, was in the employment of the defendant upon that train, and that as such it was his duty to uncouple the car from the tender, and that in the performance of his duty Brown threw the switch and started towards the car to uncouple it, and that just as he did so, he gave the witness a "back up signal," waving his hand slowly, but that he said nothing to the witness; that Brown

was at the time of the injury on the side of the engine known as the fireman's side, and that the engineer in charge of the train could not see him; that as soon as Brown gave said signal, the witness told the engineer to come back, and thereupon the engineer put his engine in backward motion slowly, in the usual manner, and continued to back until Brown called them to stop; that the engineer was moving back at the rate of 2 or 3 miles an hour; that as soon as Brown reached the opening between the tender and the car he stepped in and pulled the pin, but instantly cried to the engineer that he was killing him; and thereupon the engineer immediately threw his engine in forward motion, which reversed the engine and stopped it within 3 or 5 feet, but one of the wheels of the tender had passed over Brown, thereby killing him. This witness further testified that when Brown gave the signal, witness knew that it was his intention to go between the tender and car for the purpose of uncoupling them, and that he saw Brown start towards the opening and go between the tender and car, but that he did not, at any time, communicate to the engineer the fact that said Brown was about to go, nor the fact that he had gone, between the engine and car.

The plaintiff then introduced as a witness one Jemmison, who testified that he was division foreman on the Mobile & Birmingham Railroad, and that he had been connected with the operation of railroads for 16 years, 13 years of which time he had served as conductor of trains; and that he was familiar with the duties of a fireman upon a locomotive engine; that it would be the duty of the fireman to keep a lookout for signals or obstructions and to notify the engineer at once when he sees a brakeman about to go between the engine and a car while the engine is preparing to make a switch, and when the fireman knew the engineer could not see the brakeman. This witness further testified as to the duty of a fireman under the circumstances which the facts of this case showed, surrounded the fireman, McDonald.

The plaintiff then asked the witness the following question: "If a fireman sees a brakeman in a perilous position, and knows and sees that the engineer can not see him, has the fireman any other duty to perform?" The defendant objected to this question, the court sustained the objection, and to this ruling of the court the

plaintiff duly excepted. Thereupon the plaintiff asked the witness the following several questions, and separately excepted to the court's sustaining the defendant's objections to each of. said questions, as asked : "Mr. Jemmison, what is the duty of a fireman when he sees a brakeman in a perilous position, or about to go into a perilous position, and sees that the engineer can not see him? "'I will ask you, Mr. Jemmison, whether or not, a fireman on a railroad locomotive engine has any duty to perform relative to notifying the engineer as to the perilous position of an employé, if he sees it and knows that the engineer does not see it?" "Mr. Jemmison, I will ask you whether or not a fireman has any duty to perform when he sees a brakeman in a perilous position, or that he is about to assume a perilous position, but knows that the engineer can not see the brakeman?"

The defendant proved that prior to the injury of the plaintiff's intestate, and at the time of said injury, it had established and had in force a rule for the government of its employés, which fact was known to the plaintiff's intestate, and a copy of which rule is copied in the defendant's second plea to the seventh count of the complaint. The defendant then introduced as a witness, one Comer, who was the engineer in charge of the engine at the time that James L. Brown was killed, and who testified as follows : That he had been an engineer for fourteen or fifteen years, that on the morning of the accident he had two cars for Bolling, and that Brown was injured while they were attempting to set the last car which was coupled to the engine into the switch ; that Brown was a good brakeman and was doing his duty at that time ; that he did not see Brown after he threw the switch until after he had been killed, but that he heard Brown call out come back about the same time that the fireman, McDonald, told him to come back ; that he started the engine back at a slow rate of speed, and had only rolled ten or fifteen feet, when he heard Brown cry out that he was being killed, and that he instantly threw his lever forward and gave his engine steam and stopped his engine within from three to five feet, and it could not have been stopped quicker, but that he was too late to save Brown who had been run over by one wheel of the truck ; that the car rolled about

twenty feet further than the engine; that the track was level at that point; that he did not know where Brown was at the time that he put his engine in the backward motion, and could not see Brown from his position on the engine, and did not know that Brown intended to uncouple the car, but thought that he had already done so before the engine began to back; that he did not see the signal Brown gave, but the signal to come back used on the defendant's railroad, was the waving of the right hand on a level with the shoulder, two or three times from right to left; and that the only difference between a signal to come back and a signal for slack was that the signal to come back was a fast motion, while the signal for slack was a slow motion. While cross-examining this witness, the court asked him the following question: "Mr. Comer, how many men have you killed or injured by running your engine on them?" The defendant objected to this question and the court sustained the objection; and to this ruling the plaintiff then and there excepted.

The witness McDonald being again introduced by plaintiff, further testified that Comer, the engineer, did not attempt to kick the car into the switch at the time of the accident, but was backing the engine slowly at the time. The defendant proved by one Scott, the conductor of the train in question that he ordered Brown to set the car in question into the switch, but gave him no particular instructions to uncouple in any particular manner or at any particular time. That this order was given to Brown some time before the engine and car went up to the switch, and that the conductor was not present at the time of the accident.

The defendant requested the court in writing to charge the jury that "If they believe the evidence, they must find for the defendant." The court gave this charge, and to the giving thereof the plaintiff duly excepted. There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the rulings of the court upon the evidence, to which exceptions were reserved, and the giving of the general affirmative charge for the defendant.

HARRY T. SMITH, for appellant. —The second plea to

the seventh count of the complaint did not aver that the plaintiff's intestate had knowledge of the rule therein set out; and, therefore, the demurrer to such plea should have been sustained.—*L. & N. R. Co. v. Hawkins*, 92 Ala. 241; *M. & C. R. R. Co. v. Graham*, 94 Ala. 552; *Hissong v. R. & D. R. R. Co.*, 91 Ala. 514.

2. The court erred in sustaining the defendant's demurrer to the plaintiff's third replication to the second plea to the seventh count. It was error to sustain the demurrer to this replication, unless it be that the rule was binding, even though the duties of the employment could not be performed in compliance therewith. It would be strange, indeed, if the defendant could establish rules which could not be complied with in doing its work, and then insist on the impossibility it chose to exact. To so hold would exempt them from liability in all cases. It would hardly be either logical, or just to hold that it was negligence in an employé not to perform a task in an impossible manner. The rule must be practicable, consistent with the duties exacted. There was, therefore, error in sustaining this demurrer.—*R. R. Co. v. Graham*, 94 Ala. 553; *Hissong v. R. & D. R. R. Co.*, 91 Ala. 518.

3. The appellee, apparently feeling that it is relieved of all duty to be consistent in its contentions, has proceeded to argue the propriety of the giving of the general charge upon the facts of the case, entirely irrelevant irrespective of all questions of pleading. The contention of the appellee is that it was entitled to the general affirmative charge in the court below, not because there was no evidence tending to support the allegations of the complaint, and of those counts thereof, to which the general issue was alone pleaded, but because, as the appellee contends, the plaintiff was guilty of contributory negligence. The act charged against the fireman amounted to intentional or wanton wrong. If these counts are to be considered, as charging wantonness, and we think they are, and appellee has itself so construed them, then the defense of contributory negligence would not have been available, even had it been pleaded. *Ga. Pac. R. Co. v. O'Shields*, 90 Ala. 31; *L. & N. R. R. Co. v. Watson*, 90 Ala. 69; *L. & N. R. R. Co. v. Markee*, 103 Ala. 160; *Hissong v. R. & D. R. R. Co.*, 91

Ala. 518; *L. & N. R. R. Co. v. Webb*, 97 Ala. 310; *A. G. S. R. R. Co. v. Richie*, 99 Ala. 346; *Pannell v. R. R. Co.*, 97 Ala. 304. The question, however, which arises upon the giving of that general charge, is not one as to whether the plaintiff would or would not have been entitled to recover, had the case been tried upon the law and the evidence, irrespective of all questions of pleading. The only question which is presented is, whether there was any evidence tending to support the allegations of either the 9th, 11th, 15th or 16th counts of the complaint, to which only the general issue is pleaded. If there was evidence tending to support any one of these counts, the giving of the general charge was erroneous.—*Schlaff v. L. & N. R. R. Co.*, 100 Ala. 388; *Allison v. Little*, 93 Ala, 151; *M. & C. R. R. Co. v. Graham*, 94 Ala. 545; *M. & O. R. R. Co. v. George*, 94 Ala. 220.

4. It was the duty of the fireman to notify the engineer that Brown was about to assume this perilous position. It is true that the eleventh count does allege that it was the duty of the fireman to so notify the engineer, but I consider this allegation unnecessary, because I think that the court judicially knows that it is the duty of the fireman to notify the engineer of any fact known to the fireman, and unknown to the engineer, and the knowledge of which is necessary to enable the engineer to properly handle his engine. No one has doubted that it is the duty of the engineer to keep a vigilant lookout for obstructions or dangers, a duty which is due to employés rightfully on, or liable to rightfully go, upon the track.—*Helton v. Ala. Mid. R. Co.*, 97 Ala. 275. The fireman's duty and position are also judicially known—*H. A. & B. R. R. Co. v. Walters*, 91 Ala. 444.

THOS. G. JONES, *contra.*—1. The demurrer to the second plea of the seventh count was properly overruled. It is unnecessary that there should have been actual personal knowledge of the rule on the part of the employé before there could have been contributory negligence on his part, by the violation of such rule. There is a presumption, in the absence of denial, that the employé knew the rule.—*Alexander v. L. & N. R. R. Co.*, 83 Ky. 590; *Pilkinton v. Gulf &c. R. Co.*, 70 Texas, 226; *LaCroy v. N. &c. R. R. Co.*, 132 N. Y. 570; *Alcorn v. C. & A. R. Co.*, 16 S.

W. Rep. 229; *Shenandoah V. R. R. Co. v. Lucado*, 86 Va: 390; *Slater v. Jewett*, 85 N. Y. 68; *Midland R. R. Co. v. Roach*, 34 Amer. & Eng. R. R. Cas. 271. *Pa. R. R. v. Langdon*, 1 Amer. & Eng. R. R. Cas., 98 is a strong authority on this point, holding that an employé although travelling as a passenger "must be presumed to have knowledge" of a rule which was conspicuously promulgated. *Britton v. A. & C. R. R. Co.*, 88 N. C. 536, holds that it is a duty resting even upon a passenger uninformed to inquire into and learn an established regulation.

2. The reasonableness and practicability of the rule need not be affirmatively shown. That is defensive matter in any event, if the employé can raise the question; for his remaining in the service would ordinarily make the risk resulting from the operation of the rule, risk of the service. There would be no safety in the operation of railroads if employés can disregard rules, because they deem them unreasonable.—*Woolsey v. Lake Shore R. R. Co.*, 33 Ohio St. 227; *M. & C. R. R. Co. v. Thomas*, 51 Miss. 641. If an employé does not like a a rule or considers it unreasonable he should leave the service; but he can not remain in the service of the master and disregard it at the master's expense. Apart from this, if appellant was in position to raise the question, this court, and nearly every other court in the country, judicially knows that a rule is reasonable which forbids a brakeman to go in between cars to uncouple them while they are in motion. This and similar rules have been repeatedly held "reasonable" and "wholesome" by this court.—*M. & C. R. R. Co. v. Graham*, 94 Ala. 522.

3. The gravamen of the 11th count is that McDonald the fireman, negligently allowed the engineer to be in ignorance of the fact that Brown was about to go between the cars, although he well knew thereof, &c. This count was bad both at common law and under the statute. The averment that it was the duty of the fireman to inform the engineer of the whereabouts of the plaintiff's intestate, which was afterwards added by way of amendment to this count, did not cure its other defects. If, as appellant contends, this duty arose as matter of law from the facts already stated, he was not harmed by requiring him to state the duty, for in no

event could it prejudice him.  If his averments did not
raise that duty, intestate could not complain of the fail-
ure to perform it.

4.  The court properly disallowed the question to
Comer:  "How many men have you killed or injured
by running your engine on them?"  1st.  The com-
plaint was not so framed as to permit the introduction of
such evidence.  No issue arose on the pleadings as to
Comer's skill or fitness as an engineer, nor as to any
fault of the defendant in appointing or retaining him
in the service of the company.  The complaint gives no
hint of such an issue, and to allow the introduction of
the evidence would have operated a surprise and injus-
tice to the defendant.  2d.  The question was too broad.
If evidence as to the number of men injured by Comer
was admissible, it could only be as to men killed while
coupling and uncoupling cars when he was in charge of
the engine.  Evidence as to tresspassers run over and
killed upon the track, would in no way illustrate his
alleged negligence in injuring this coupler.  The evi-
dence, if admissible under any circumstances, could
only be received for a particular purpose, and appellant
failing to limit it to that purpose, but offering it gen-
erally, can not complain of the refusal to allow it as
offered.  3d.  The question, however, was objectionable
on much broader grounds.  The evidence for which the
question called would violate the familiar rule stated
by Mr. Justice Stephens, "The occurrence of facts, simi-
lar to but not connected with the fact in issue in the re-
lation of cause and effect, is not admissible in evidence."
When all the cases are taken together, the weight of
authority is decidedly against the admissibility of proof
of prior accidents.  Courts and authorities of great
weight deny the doctrine altogether.—*Hubbard v. R.
R. Co* , 39 Me. 506 ; *Robinson v. R. R. Co.*, 7 Gray. 92 ;
*Phelps v. Conant*, 30 Vt. 277 ; *Kolb v. Chicago Stamp-
ing Co.*, 33 Ill. App. Cases, 488 ; *Bremner v. Newcastle*,
83 Me. 415 ; *Thompson v. Lake Shore R. R. Co.*, 84
Mich. 281 ; *Moore v. City of Richmond*, 8 S. E. Rep.
388; *Piollet v. Simmers*, 106 Pa. St. 95; Starkey on Evi-
dence, 81 ; 1 Greenl. Ev., §§ 52 and 448 ; 1 Thompson on
Negligence, 801 ; Wharton's Negligence, § 359 ; *Cleve-
land, &c. R. R Co. v. Wynant*, 114 Ind. 525.

Under the undisputed facts in this case, the general

affirmative charge in favor of the defendant was proper. It was proved that the rule forbidding going between cars while in motion to uncouple them was known to Brown. He violated it knowingly. There was no emergency which justified or excused him in so doing; for there was safe and practicable ways for uncoupling cars. He was not only directed, but forbidden to do that which he did. Under long line of decisions he can not recover.—*A. G. S. R. R. Co. v. Richie*, 99 Ala. 346; *R. R. Co. v. Orr*, 91 Ala. 548; *L. & N. R. R. Co. v. Markee*, 103 Ala. 160.

McCLELLAN, J.—The circuit court erred in overruling plaintiff's demurrer to second plea to seventh count of the complaint. We are unable to see that the plaintiff could be charged with negligence, for that he did an act in violation of a rule, unless he knew the rule. Negligence can only be affirmed in respect of situations and conditions known to the party to whom it is imputed. Surely a man could not be guilty of a negligent violation of a rule of which he had no knowledge, the act done not being negligence *per se*. Notice is not in such cases of the equivalent of knowledge. A brakeman would have notice of a rule forbidding him to uncouple moving cars if he had information that his employer had adopted and promulgated a set of rules for the conduct of employés. This would put him on inquiry, which, if pursued, would lead to a knowledge of the particular rule. Still, until the inquiry has been made and the knowledge gained, his conduct as to care or negligence cannot be measured by the rule—a factor which did not operate upon him in the act done. He might be negligent in not pursuing the inquiry; but such negligence would be only a remote cause of the injury suffered by doing the act in a manner forbidden by the unknown rule. Upon these and like considerations, it has been more than once decided by this court that knowledge of the rule on the part of the complaining employé is necessary to the imputation of contributory negligence to him in the doing of an act violative of its provisions.—*Ga. Pac. Ry. Co. v. Propst*, 83 Ala. 518; *Louisville & Nashville Railroad Co. v. Perry*, 87 Ala. 392; *Louisville & Nashville Railroad Co. v. Hawkins*, 92 Ala. 241.

That the rule pleaded was not practicable of observance, consistently with the duties imposed upon and required of brakemen by the company, was matter for replication to this plea, and hence, so far as the demurrer proceeded on that ground, it was properly overruled. But this matter was set up by the replication to the plea, and adjudged bad on the defendant's demurrer thereto. This was error. Plaintiff's third replication to the second plea averred that it was not practicable to perform the duties of said employment without violating said rule. The act in violation involved in this case not being necessarily negligent in itself, but only because prohibited by the rule, if the duty which plaintiff's intestate owed to the defendant could not be performed except in doing an act, necessary to be done, in the mode prohibited by the rule, the defendant, having imposed this inconsistent duty on the brakeman, must be held to have waived the observance of the rule in respect to it.—*Memphis & Charleston R. Co. v. Graham*, 94 Ala. 545; *Hissong v. Richmond & Danville R. R. Co.*, 91 Ala. 514.

It was upon the plaintiff, claiming, as he did, damages for the negligence and wrong of fellow servants of his intestate, to state a case within section 2590 of the Code. The 9th, 11th, 15th and 16th counts were intended to present a cause of action under the 5th subdivision of that section, as for the wrong of a person in the employment of the defendant who had charge or control of a locomotive, engine, signal point, &c., &c. The person whose negligence was thus counted upon was the fireman, and this upon the theory that he had charge or control of the engine, for the purposes of this case. Now, ordinarily, the engineer, and not the fireman, is in charge of the engine. But, as has been decided by this court, if it be shown to be the duty of the fireman to receive signals from a switchman and transmit them to the engineer—if, in short, he is under a duty to keep a lookout for the purpose of acquainting the engineer with the situation, that the engine may be handled accordingly—he may be said to be, for that purpose, a person in charge of the engine, in that he is discharging a duty which primarily rests on the engineer.—*Richmond & Danville Railroad Co. v. Jones*, 92 Ala. 218. This duty on the part of the fireman arises from, and is rested

upon the impracticability of the engineer's personally keeping the necessary outlook under certain circumstances, as where, from his position on the engine, he cannot see along the fireman's side of his train. Not being a duty universally springing from the relation of fireman, but dependent upon particular facts—and the existence of these facts being essential to investing the fireman with the responsibilities of a person in charge of the locomotive—the facts themselves must appear in the complaint, or the conclusion from them, that such was the duty of the fireman in the particular case, must be therein averred. The counts in question—9, 11, 15 and 16—failed to aver these facts or this conclusion. The demurrer interposed to them was well sustained on this ground.

These counts having been amended by the addition of an averment that it was the fireman's duty to have notified the engineer, &c., the court should, in our opinion, have received the evidence of Jemmison, going to show that the duty of keeping a lookout and informing the engineer of the situation with which they were dealing was upon the fireman. Such seems to have been the course pursued in *Richmond & Danville Railroad Co.*, v. *Jones*, *supra*; and we think it ought to have been followed in this case.

The abstract states that, "while cross examining this witness, the court asked said Comer the following question : 'Mr. Comer, how many men have you killed or injured by running your engine over them?' The defendant objected to this question, and the court sustained this objection, and to this ruling plaintiff excepted." The *court* asked the question, not the plaintiff, according to the abstract. The court is under no duty to either party to ask any question of a witness, nor to persist in any question he may have propounded, though proper in itself, whether objected to or not. The withdrawal of this question by the court was, therefore, not a matter of which either party could complain. It is very probable that the abstract is incorrect in ascribing this question to the court, instead of the plaintiff. But we must take the abstract as we find it, except in those particulars in which its correctness is questioned by the appellee ; and it must affirmatively show error. We do

not at all pass upon the abstract competency of the facts which the question tended to draw out.

The only other question we need to consider has reference to the propriety of the court's action in giving the affirmative charge for the defendant. It is chiefly insisted that plaintiff was entitled to have the case presented by the 11th count submitted to the jury. That count relied upon the negligence of the fireman, as being that of a person *pro hac vice* in charge of the engine, in that he knew the intestate was in an unsafe place—a place in which he was liable to be killed if the engine were moved back, as in fact it was—and that he negligently failed to notify the engineer of Brown's peril; the theory being that had the engineer been properly informed he would not have moved the engine as he did, and Brown would not have been killed. So far as the abstract shows, no demurrer to this count was interposed after its amendment by inserting therein the averment that it was the fireman's duty to have informed the engineer of Brown's peril; but the defendant took issue upon it, and, as far as the abstract shows, did not rely upon contributory negligence on the part of Brown as a defense to it. The sole inquiry on this part of the case, therefore, is whether the evidence tended to support the material averments of this count. We think it did. The jury, we think, might have reached the following conclusions—it was open to them on the evidence to have done so: (1) that the fireman knew that Brown was between the car and tender, or about to go between them to uncouple them, and knew also that the engineer who was moving the engine was not aware of this; (2) that the fireman's duty on this state of fact was to inform the engineer of Brown's position, and that he negligently failed to discharge this duty; (3) that in consequence of the engineer's ignorance of the fact that Brown was about to go, or had gone, between the cars, he moved the engine further and more rapidly than he otherwise would have done, being under the impression that the movement signalled for by Brown was not for the purpose of giving slack, as he would have known it was had he been aware that Brown was going or had gone between the cars, but for the purpose of shunting the car onto the side track; and (5) that the increased movement of the engine, consequent upon the engineer's

[Davis *et al.* v. Bingham *et al.*]

erroneous impression, which the fireman could and should have removed from the mind of the former, was not anticipated by Brown, and was the occasion of his being run over and killed. And, upon these conclusions of fact, the jury should have returned a verdict for the plaintiff. The general charge took all of this away from them, and the giving of it was error.

The question whether an employer is liable in damages for the wanton or willful misconduct of his servant, whereby another servant is injured, under section 2590 of the Code, does not arise on the abstract before us, and, under the operation of the doctrine of *Louisville & Nashville R. R. Co. v. Markee*, 103 Ala. 160, will probably not be in the case on another trial. For these reasons we decline to consider it, or to reconsider it, if, as is insisted for appellant, it has already been determined by this court.

The judgment of the circuit court must be reversed. The cause is remanded.

Reversed and remanded.