# Coosa Pipe Foundry Co. *v.* Poindexter.

## *Damage for Injury to Servant.*

(Decided April 24, 1913. 62 South. 104.)

1. *Pleading; Misjoinder; Departure.*—Where the original action was by a servant under subdivision 1, section 3910, Code 1907, for injuries because of defects in the ways, etc., and a complaint described the injury and an arbor used in molding and the hole, but failed to set up that the hole constituted the defect, an amendment charging a defect in the arbor, consisting of a hole from which the molten iron escaped and produced the injury was not a departure, nor did it render the complaint bad for duplicity.

2. *Master and Servant; Injury to Servant; Action; Complaint.*— A complaint alleging the duty of the master to exercise due care to furnish a servant with reasonably safe appliances does not charge that it was the master's absolute duty to do so, as the expression "due care" means that duty owing the servant which the law fixes in the exercise of reasonable care, but when this is followed by the

further averment that defendant negligently failed to furnish reasonably safe appliances, it is equivalent to charging a failure to exercise reasonable care in furnishing them.

3. *Same; Contributory Negligence.*—A plea alleging that plaintiff knew that hot iron, when poured into the molds or core, might explode and run out, was defective, since almost anything might happen; so also was a plea defective when based on the fact that plaintiff stood with his foot on the mold in such position that he would probably be burned if the hot iron had been poured into the mold, had exploded or had run out.

4. *Same; Jury Question.*—Where there was evidence from which the jury could infer the master's negligence as charged, the master was not entitled to have a verdict directed on the whole complaint.

5. *Same; Contributory Negligence.*—A servant cannot be guilty of negligence in pouring hot iron into a mold or core unless he is aware that it would probably explode when poured into the mold.

6. *Same; Duty of Master; Safe Appliances.*—It is the duty of a foundry to exercise reasonable care to furnish its employees with reasonably safe molds and arbors, and in placing them in a common pile to be taken to the molders, to furnish only those that are reasonably safe, and not to include those which are defective.

7. *Same; Delegation.*—The duty of furnishing a servant with reasonably safe tools and appliances suitable for the purposes for which they are intended is a non-delegable duty; hence, the master cannot escape liability because of the negligence of another employee in failing to properly assort good appliances from the bad when taking them from the place where they are left by the master, to the place where they are to be used by the employee.

8. *Same; Mixing; Appliances.*—Where a foundry places arbors or molds in a general pile to be used for molding purposes its failure to assort the good from the bad may be considered by the jury as the equivalent of negligently furnishing defective or unsafe arbors.

9. *Same; Use or Purposes Not Intended.*—Where a master furnished good appliances or tools for the purpose intended, and the servant selected or used them for some other purpose, the master is not liable for the defect.

10. *Same; Jury Question.*—Where the evidence was such that the jury could infer that the defect in an appliance furnished was known to the superintendent of the master, or that such superintendent was negligent in not discovering such defect, the master was not entitled to have the verdict directed for him where the action was under subdivision 1, section 3910, Code 1907.

11. *Same; Assumption of Risk; Obvious Defect.*—Where any imperfection or defect in an appliance furnished for work is apparent to the servant, he is charged with assuming the risk of using such appliance, whether the selection was made by him or by another servant.

12. *Negligence; Inference; Jury Question.*—Where the evidence was such that the jury could infer that the master was guilty of negligence charged, the master was not entitled to have the verdict directed.

13. *Charge of Court; Covered By Those Given.*—The court will not be put in error for refusing instructions substantially covered by written instructions given.

APPEAL from Gadsden City Court.

Heard before Hon. JAMES A. BILBRO.

Action by A. S. Poindexter against the Coosa Pipe Foundry Company for damages for injuries received while in its employ. Judgment for plaintiff, and defendant appeals. Affirmed.

Plaintiff was engaged as a molder by appellant, who operated a cast-iron soil pipe foundry, and while so engaged was badly burned about one foot and ankle, which resulted from an explosion in or fire shooting out of a mold in which joints of pipes were being molded. The pipe was being molded in what is called a "flask" by molders, which consists of two parts, the bottom or base commonly called the "draf," and a top or lid, and are so constructed as to mold two joints of pipe at one time. The flasks are hollow, and were lined with moist sand before the hot iron is poured in. On the inside of each flask are placed two pieces of cast-iron cylindrical in shape, called "arbors." Around these arbors damp sand is molded in such a way as to shape the inside of the pipe being molded. These arbors are also hollow and have along their tops at short intervals small holes for the purpose of permitting the gases formed by the hot iron to escape, preventing the blowing of the pipes. The ends of the arbors extend out on the ends of the flasks, the top part of the flask or lid containing three holes at intervals on the top called gates, through which molten iron is poured into flasks, and while the plaintiff was pouring molten iron into one of these flasks, or had just ceased pouring it in, an explosion occurrred from the inside, and red hot iron and fire shot out of the end of one of the arbors near

which plaintiff was standing, striking him on one foot and leg. There was a conflict in the evidence as to the cause of the explosion; one theory being that the explosion occurred on account of gas in the ordinary way, as often happens, and consequently that it was one of the incidents of molding pipes; while the other theory was that there was a large hole in the arbor, causing the molding sand to break down and permit the molten iron to escape into the arbor, where it came in contact with water or cold iron, causing the explosion. The first count, after stating the fact of employment, and the fact of the injury while in the employment, alleges the injury to be due approximately to a defect in the ways, works, etc., which defect consisted in this: The plaintiff was a molder, and part of his duties required him to pour molten iron into a flask, or form for the forming of cast-iron pipe (a description of which is given above). And that the arbor furnished by defendant to plaintiff with which to do his work had a hole in it which was covered by the same, and, when the plaintiff poured the molten iron into the flask, the gases formed by the molten iron escaped through the hole into the hollow of the arbor, and thence onto plaintiff. Count 4 is sufficiently set out in the opinion. Plea 5 is sufficiently disclosed by the opinion. Plea 3 is one of contributory negligence based on the fact that plaintiff stood with his foot on said mold or core in such a position where he would probably be burned in the event the hot iron which had been poured into the same explosive or ran out of said mold or arbor, knowing that hot iron, when poured into such mold or core, frequently did explode or run out. Four is to the same practical effect as 3. The following is charge 5 refused to defendant: "The servant is not entitled to recover damages against his master for injuries resulting from a defect in the ways,

works, or machinery of his plant until he has had a reasonable time to remedy such defect, and if the jury find from the evidence in this case that the negro laborers took defective arbors out of the machine shop of defendant and made cores of them without the knowledge of defendant's superintendent and inspector, and before the inspector had time to examine them, plaintiff cannot recover in this action for the injuries resulting from their use."

HOOD & MURPHREE, for appellant. The first count as amended was duplicitous, and the court erred in overruling the demurrers. The fourth count was defective, and demurrers thereto should have been sustained. Plea 5 sets up a good defense, and the court was in error in sustaining demurrers thereto.—*Coosa M. Co. v. Williams,* 133 Ala. 606; *Rich v. Kilby F. & S. Co.,* 51 South. 377; *Creola L. Co. v. Mills,* 42 South. 1023. Under the facts in this case appellant was not liable.—2 Leb. 1743 and authorities cited in note.—92 Mich. 464; 94 Me. 535; 2 Leb. p. 1816. Counsel discuss the refused charges in the light of these authorities, with the insistence that their refusal was erroneous and prejudicial.

CULLI & MARTIN, and A. E. GOODHUE, for appellee. The record fails to show that the demurrers to count 4 were ever acted on by the trial court, and hence, they will not be here reviewed.—*Reeves v. Anniston K. Mills,* 154 Ala. 565. Counts 1 and 4 were evidently good.—*Republic I. & S. Co. v. Williams,* 168 Ala. 612. Counsel discuss other assignments of error, but without further citation of authority.

ANDERSON, J.—Count 1, as amended, was under subdivision 1 of section 3910 of the Code, and charged

a defect in the arbor through which the molten iron escaped which consisted in a hole in said arbor. We find nothing "duplex" about the count as suggested in brief of appellant's counsel. The original count described the injury and instrumentality, and, while describing the arbor and hole, failed to set up that said hole constituted the defect, and the amendment to the complaint merely supplied this omission.

Count 4 charges that the defendant negligently failed to furnish plaintiff with reasonably safe cores, etc. It is true that this charge is preceded by the statement that it was the duty of the defendant to exercise "due" care to furnish plantiff with reasonably safe appliances, etc. The count would perhaps be better if it said it was the duty of the defendant to exercise reasonable skill and care to furnish reasonably safe appliances, but the word "due" does not charge that it was the defendant's imperative, absolute duty, as the word "due" care means the duty owing the plaintiff by the defendant and which the law fixes as the exercise of reasonable care, and when this is followed by the further averment that the defendant negligently failed to furnish the plaintiff with reasonably safe cores, etc., this is the equivalent of charging that the defendant failed to exercise reasonable care in furnishing said core.—*Sloss-Sheffield Co. v. Stewart*, 172 Ala. 516, 55 South. 785; *Gray Eagle Co. v. Lewis*, 161 Ala. 417, 49 South. 859; *Smith v. Watkins & Donelson*, 172 Ala. 502, 55 South. 611; *Republic Co. v. Williams*, 168 Ala. 612, 53 South. 76.

Defendant's plea 5, if not otherwise bad, was defective in alleging that the defendant knew that hot iron when poured into the mold or core "might" explode or run out. Almost anything "might" happen, and the plaintiff could not be guilty of negligence in this respect unless he knew that the hot iron would likely or

probably explode when poured into the core or mold. Pleas 3 and 4 were also bad.

Charge 1 was the general charge for the defendant as to count 2, and this count was eliminated from the complaint. Defendant's refused charges 3, 8, 9, 10, and 11 are the affirmative charges as to counts 1, 3, and 5, or as to the whole complaint, and which were properly refused, as there was evidence from which the jury could infer negligence as charged in said counts.

It was the duty of the defendant to exercise reasonable care to supply its employees with reasonably safe arbors, and there was evidence that the said arbors had been placed or left at a point for use and distribution, and some of which were in proper condition, and some were not; yet they had been placed together indiscriminately, and the defendant cannot escape liability, as matter of law, upon the idea that a fellow servant of the plaintiff had been handling the arbors and reopening the vents therein when clogged with molten metal, or because of the negligence of a fellow laborer in failing to discover the defects while in the discharge of his duty of carrying the arbors from the place of storage to the molders and in not taking only those which did not have holes in the bottom. The arbors were placed in a general pile to be used for molding purposes, and it was open for the jury to find that defendant was guilty of negligence in failing to furnish safe arbors when it caused or permitted bad ones to be commingled with good ones in a common pile for use or distribution. The duty of furnishing the servant with reasonably safe tools and appliances, suitable for the purposes for which they are furnished, is non-delegable, and the master cannot escape liability on account of the negligence of the plaintiff's fellow servants in failing to properly assort the good from the bad, when removing from the point

where placed by the master for use. The master, in placing them at a certain place and in a common pile to be taken therefrom to the molders, should have furnished only those that were reasonably safe, and should not have included those that were defective, and the failure to assort the good from the bad could have been considered by the jury as the equivalent of negligently furnishing defective and unsafe arbors for molding purposes. So much of section 603 from Labatt on Master and Servant as is quoted in brief of appellant's counsel is not opposed to the above. This section expressly states that, when the master has provided an adequate and readily accessible stock of suitable appliances "in good condition" from which to make a selection and the imperfection of an instrumentality selected therefrom was or ought to have been apparent to the servant who selected it, the master cannot be held responsible for injuries which are sustained by the use of that instrumentality, whether the sufferer be the servant himself who made the selection, or an employee.

Of course, if an imperfection or defect is apparent to the suffering servant, he would no doubt be chargeable with an assumption of risk, whether the selection was made by him or another servant; but we do not think that Mr. Labatt means to convey the idea that the master would be permitted to furnish certain tools or appliances for a certain purpose, all alike except that some are sound and some defective owing to small holes in the bottom of same, and delegate to an ordinary laborer the duty of selecting the good from the bad and furnishing only the good to the molder, and thereby escape liability to an injured molder because of the negligence of the ordinary laborer in selecting and furnishing the appliances to the molder from the common pile, when all of them had been placed there for the same use or

purpose. It was the duty of the master to furnish reasonably safe arbors, and, when this defendant furnished good and bad ones mixed, it was open to the jury to find that it breached the duty owing the plaintiff in delegating the selection to the negro laborers when delivering them to the molders, as it was but an attempt to delegate to them the duty of furnishing safe arbors, and which said delegation is not authorized by law. We are of the opinion that Mr. Labatt, by section 603 of his work, meant that the master was not responsible for the selection of tools, which were not defective, but which were not suitable for the purposes for which they had been selected and were not put there by a master to be used for that special purpose.

In other words, if the master furnished good appliances or tools for the purpose for which he furnishes them and a servant selects or uses them for some other purpose, the master would not be liable, and this idea is borne out by the last part of the section, which is not included in the quotation in appellant's brief. Says Mr. Labatt in section 26: "Although it is a master's duty to use due care to furnish his servants tools and appliances suitable for the purpose for which they are provided, he owes them no such duty when they put his tools to uses for which they were not intended." This eminent writer (Mr. Labatt) evidently did not intend to convey the idea that the master could discharge his duty by furnishing tools or appliances in bulk, some good and some defective, and then escape liability to an injured servant because a fellow servant, charged with the duty of carrying the appliance to him for use, failed to do what the master should have done at the start, to wit, select the bad from the good. If the master failed to select the bad from the good, he furnished defective arbors as well as good ones. Moreover, if the rule

[Merriweather v. Sayre M. & M. Co.]

was different, it was a question for the jury as to whether or not the laborers charged with taking the arbors to the molders were guilty of negligence in delivering those with holes in the bottom as well as in the top, as there was no proof that they knew this rendered them dangerous or defective.

On the other hand, if it can be assumed that the arbors did not contain holes in the bottom when originally furnished, which is not the case, still the defendant was not entitled to the general charge under the whole complaint or the one under the statute, as there was evidence from which the jury could infer that the defect was known to a superintendent or that he was guilty of negligence in failing to discover and remedy same.

Charge 5, refused the defendant, was contrary to the principles laid down in discussing the general charge, and charges 6 and 12, whether good or bad, were covered by given charges 24, 25, 28, 34, 37, and 39.

There was no reversible error in the rulings upon the evidence.

The judgment of the city court is affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.