(97 South. 905)

## SOUTHERN RY. CO. v. CHESTNUTT.
### (6 Div. 896.)

(Supreme Court of Alabama. Nov. 8, 1923.)

**1. Master and servant ⬅128—Master not liable, where suitable tools used improperly.**

Though it is the master's duty to use due care to furnish his servants tools and appliances suitable for the purpose for which they are provided, he owes them no such duty when they put his tools to uses for which they were not intended.

**2. Master and servant ⬅110—Bolt used to support locomotive curtain roll held defective.**

A five-eighths inch steel or iron bolt, passing through the cab wall of a locomotive, and fastened by nuts against the cab wall, and used solely as a pin to support a canvas curtain roll, *held* to have become defective when the bolt was bent upward so that the curtain could not be taken therefrom with ordinary convenience and dispatch.

**3. Master and servant ⬅289(17)—Impropriety of use of instrumentality by employee held for jury.**

Whether plaintiff fireman, injured by falling from the engine while, attempting to adjust a gangway curtain, held by a defective pin on the outside of the cab, adopted a reasonable method in leaning out of the cab to close the curtain when it began to rain, and when he found that he could not accomplish the act in the ordinary way on account of the defect, *held* a question for the jury; his knowledge that the pin was bent upward not being sufficient, as a matter of law, to charge him with knowledge that the strength of the pin was so impaired as to render the use made of it obviously dangerous, and hence unauthorized.

**4. Master and servant ⬅233(3)—Negligent use of appliance may arise from assuming improper position.**

Negligent use of an instrumentality by a servant may arise from want of ordinary care in imposing an unnecessary strain or burden thereon, by reason of the position assumed by the servant at the time he undertakes to use it.

**5. Negligence ⬅101—Contributory negligence merely reduces damages, under federal Employers' Liability Act.**

In an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), contributory negligence is no bar to recovery, but goes in reduction of damages.

**6. Master and servant ⬅217(1)—Risk not known is not assumed; "assumption of risk."**

There is no "assumption of risk" where there is no knowledge of risk.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assumption of Risk.]

**7. Trial ⬅253(9)—Requested charges ignoring evidence properly refused.**

Requested charges of defendant, sued for injuries, *held* properly refused as requiring a verdict for defendant on facts hypothesized, and for ignoring other evidence or inferences, which, if believed, authorized a verdict for plaintiff, notwithstanding the facts set forth in the charges.

**8. Trial ⬅260(1)—Refusal of charge proper where already given.**

Refusal to give a requested charge *held* not error, where, so far as it stated the law correctly, it was covered by a given charge.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action for damages by A. C. Chestnutt against the Southern Railway Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Charges 3, 4, and 5, refused to defendant, are as follows:

"3. The court charges the jury that, if they find from the evidence that the pin which broke was used solely for the purpose of supporting the curtain, and it was sufficient for such purpose, they will find for defendant.

"4. The court charges the jury, if they find from the evidence that the pin supporting the curtain was caused to break on account of the fact that the weight of plaintiff's body or a part of the weight of his body was placed upon the pin, they will find for the defendant.

"5. The court charges the jury, if they find from the evidence that the plaintiff pulled down on the pin which broke, and would not have broken but for his pulling down on it, they will find for the defendant."

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

While it is the master's duty to exercise reasonable care to furnish its servants tools and appliances suitable for the purpose for which they are provided, he owes them no such duty when they put his tools and appliances to uses for which they are not intended. Coosa Pipe & Foundry Co. v. Poindexter, 182 Ala. 656, 62 South. 104; Dwight Manufacturing Co. v. Vaughn, 203 Ala. 462, 83 South. 327; Kreye v. Longville Long Leaf Lbr. Co., 126 La. 767, 52 South. 1018; Huyck v. McNerney, 163 Ala. 244, 50 South. 926; McCrory v. Ultima Thule, 90 Ark. 210, 118 S. W. 710, 23 L. R. A. (N. S.) 301, 134 Am. St. Rep. 24; Valparaiso Lighting Co. v. Letherman, 46 Ind. App. 303, 92 N. E. 346; Hogan v. N. Y. Central R. R. Co., 209 N. Y. 20, 102 N. E. 555; McGrath v. Fibre Conduit Co., 122 App. Div. 424, 106 N. Y. Supp. 777; Kiernan v. Gutta Percha & Rubber Co., 134 App. Div. 192, 118 N. Y. Supp. 893; Nash v. W. M. Crane Co., 141 App. Div. 665, 125 N. Y. Supp. 987; Mulligan v. Thompson Bros., 143 App. Div. 413, 128 N. Y. Supp. 126; Ackert v. City of N. Y., 156 App. Div. 836, 142 N. Y. Supp. 65. The assumption of risk is a complete defense to an action under the federal Employers' Liability Act. Pryor v. Williams, 254 U. S. 43, 41 Sup. Ct. 36, 65 L. Ed. 120; So. Pac. Co. v. Berkshire, 254 U. S. 415, 41 Sup. Ct. 162, 65 L. Ed. 335;

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Boldt v. Penn. R. R. Co., 245 U. S. 441, 38 Sup. Ct. 139, 62 L. Ed. 385; Jacobs v. Southern Ry. Co. 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970.

Black, Harris & Foster, of Birmingham, for appellee.

Whether plaintiff was using the pin improperly was a matter of fact for the jury, not of law. Coosa Pipe Fdy. Co. v. Poindexter, 182 Ala. 656, 62 South. 104; Dawson v. King (Tex. Com. App.) 222 S. W. 164; 3 Labatt, Master & Servant (2d Ed.) 2463. If the pin was defective, as a result of negligence of defendant or its employés, and plaintiff was injured as a proximate consequence thereof, he is entitled to recover. Fed. Emp. Liability·Act; So. Ry. v. Fisher, 199 Ala. 377, 74 South. 580; So. Ry. v. Peters, 194 Ala. 94, 69 South. 611; L. & N. v. Pettis, 206 Ala. 96, 89 South. 201.

BOULDIN, J. This is a suit to recover damages under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665).

The complaint, after stating the facts required to bring the case within this form of action, avers, in substance, that the "pin" which held a curtain on the cab of an engine, was, by reason of negligence, etc., "insufficient or defective," and as a proximate consequence thereof the plaintiff, while pulling down the curtain, was caused to fall and receive the alleged injuries. The pleas were in short by consent.

The main question here presented is the refusal of the general affirmative charge for defendant.

Appellant insists that, under the undisputed evidence, plaintiff was using the pin alleged to be defective for a purpose different from that for which it was furnished and intended, and that his injuries resulted from such unauthorized use. A study of the evidence, and proper inferences therefrom, discloses the following:

Defendant's switch engine was equipped with a side curtain, made of cloth or canvass, to close the gangway or opening between the engine and tender against driving rain. The curtain, in place, was some 2 to 3 feet in horizontal width, and 5 to 6 feet in vertical length. One side of the curtain was made fast to the outside or back wall of the cab. The other side was attached to a round wooden pole about 1½ inches in diameter. In the top end of this pole was fixed a U hook, or staple. When not in use the curtain was rolled on the pole and hung by the U hook on the pin protruding from the back wall of the cab.

This pin consisted of a five-eighths inch steel or iron bolt, 5 or 6 inches in length, threaded at one end and with nuthead on the other. The threaded end passed through the cab wall, and the bolt was made fast by nuts wrenched up against the cab wall inside and out. This bolt extended 2½ or 3 inches outside to receive the U hook. The sole purpose of this pin was to support the curtain roll, and hold it in place so as not to obstruct the gangway.

To use the curtain, when needed, it was required, ordinarily, for plaintiff fireman, standing in the gangway, to merely lift the curtain roll so that the U hook would clear the pinhead, then unroll the curtain, and attach the pole to the tender. This could be done without taking hold of the pin.

Plaintiff's testimony touching the accident tended to show:

The engine was standing still. It was night. A rain came, beat into the cab, and called for the placing of the curtain. Plaintiff undertook to loose the curtain in the ordinary way,' but could not. Thereupon plaintiff climbed to a higher position by placing his left foot on the decking of the cab, or on a projection outside the cab wall, and his right foot or knee on the tender. The tender was 2 to 3 feet higher than the decking. Thus standing, plaintiff was astride the gangway 2 to 3 feet wide.

Plaintiff here discovered that the pin was bent upward. Leaning forward, he took the pin and U hook in his left hand and the curtain with his right hand to pull up the "slack" in the curtain,, and by this means detach the U hook from the pin. Presently the pin broke, the plaintiff lost his balance, and fell out upon the ground, receiving the injuries for which he sues.

The plaintiff says:

"As to how hard did I pull on the curtain to pull it up—* * * I don't know how hard I pulled, just hard enough to pull on the cloth—it was pretty stiff duck cloth. I was pulling up pretty hard." "I got up there * * * to pull the slack—the curtain was rolled up fairly tight—to pull the slack in the window, to where I could catch the U on this pin; it came over the pin." "In the condition and way I pulled on the curtain, I judge I pulled down some on the pin." "I didn't swing on it." "I could stand in the position I was in without holding when the engine is standing still."

The broken pin was before the jury, and from the evidence touching its condition, as well as the presumption indulged in favor of the rulings of the trial court, we take it to show defective or weakened condition.

We have thus reviewed the tendencies of the evidence tending to support the plaintiff's case, because of the interesting question presented by defendant's request for the affirmative charge.

[1] Although it is a master's duty to use due care to furnish his servants tools and appliances suitable for the purpose for which they are provided, he owes them no such duty when they put his tools to uses for which they were not intended. Labatt's Master and Servant, § 26; Coosa Pipe Foundry Co. v. Poindexter, 182 Ala. 656, 664, 62 South. 104;

Dwight Mfg. Co. v. Vaughn, 203 Ala. 462, 83 South. 327.

Does this rule apply to the case at bar, as matter of law? The pin which broke was part of an appliance to store the curtain while not in use. It was designed to provide ready access and prompt use when required. One vertical side of the curtain was made fast to the wall of the cab. To store the curtain it was rolled back on the vertical pole against this wall. There it was "supported" by the pin. Supported in this position meant more than merely carrying the weight of the curtain. The U hook on the rigid bolt held the roll intact, prevented its obstructing the passage up and down the steps. The tighter it was rolled the less the obstruction, and at the same time the less slack left in the curtain to allow the U hook to pass on and off the pin. This explains the strong, firmly fastened bolt used for the purpose.

[2, 3] When the bolt was bent upward so that the curtain could not be taken therefrom with ordinary convenience and dispatch, it became defective. It was for the jury to say whether, in such position, the plaintiff adopted a reasonable method of overcoming the added resistance caused by such defect. It may be inferred that plaintiff, while standing in such position that he could preserve his poise without support, could not lift upward with one hand, without corresponding downward pull with the other. Such downward pull would at once aid in applying force to remove the curtain, and in maintaining the plaintiff's poise while engaged in his work. We think it would be a stretch of the doctrine of unauthorized use of appliances, to make it applicable to such case. Coosa Pipe Foundry Co. v. Poindexter, supra. This would not be a different and distinct use from that intended.

The doctrine of unauthorized use should not be confused with negligent use of tools or appliances. They are based upon different principles. The former is a just limitation of the duty of the master in furnishing proper appliances, that is, such as are suited to the uses designed and intended. When there is no duty there is no negligence. So, if the servant knowingly divert the appliance to a use for which it is not designed, he cannot complain, however defective he may find it.

[4] On the other hand, a negligent use arises from want of ordinary care in the servant's use of the appliance. This may arise from an unnecessary strain or burden imposed thereon by reason of the position of the servant at the time he undertakes to use it.

[5] The action under the federal Employers' Liability Act lies for "injury resulting in whole or in part" from the negligence stated in the act. Contributory negligence is no bar to the suit, but goes in reduction of damages.

[6] There is no evidence that plaintiff knew the pin was broken or defective other than being bent upward. This would not charge him with knowledge, as matter of law, that the strength of the pin was so impaired as to render the use made of it obviously dangerous. There is no assumption of risk where there is no knowledge of risk. 3 Labatt's Master and Servant, § 1207, p. 3263; Brown v. L. & N. R. Co., 111 Ala. 275, 19 South. 1001; So. Pac. Co. v. Berkshire, 254 U. S. 415, 41 Sup. Ct. 162, 65 L. Ed. 335.

The affirmative charge requested by defendant was properly refused.

[7] Charges 3, 4, and 5, refused to defendant, each required a verdict for defendant on facts therein hypothesized. They ignored other evidence, or inferences therefrom, which, if believed by the jury, authorized a verdict for plaintiff, notwithstanding the facts set forth in the charges.

[8] So far as charge No. 4 states the law correctly, it was covered by given charge No. 6.

We find no error in the record.

The judgment of the court below is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.