TIDWELL *v.* CENTRAL OF GEORGIA RAILWAY CO.

Under the facts of this case there was no error in granting a nonsuit.
                    JULY 18, 1913.

Action for damages. Before Judge Bell. Fulton superior court. November 23, 1911.

J. F. Tidwell, an engineer, instituted an action for damages against his employer, the Central of Georgia Railway Company. By the pleadings and his evidence the following case was presented: The defendant maintained three parallel tracks going out of Atlanta in the direction of East Point and other places, which, commencing with the most northerly, were numbered one, two,

and three, respectively. These were intersected by the two diverging prongs of a Y approaching from the south, known respectively as the "North Y," or "Belt Line No. 1," and "South Y," or "Belt Line No. 2," of the Atlanta & West Point Railroad. Defendant's tracks numbers one and two were "main-line" tracks and operated under a "block system." The track number three was a "switchtrack," used for switching cars and the like, and was not under the "block system;" but to avoid collision with trains on the respective tracks of the Atlanta & West Point Railroad Ys, mentioned above, track number three was operated under an "interlocking system," in which certain "derailing switches" were employed, which were designed to derail trains on track number three before reaching the belt line unless the switches were closed, in which event the trains would pass over the belt line safely. There were two of these derailing switches, one for each of the intersections of the prongs of the Y with track number three. The distance along track number three from the point at which it was intersected by the respective prongs of the Y was estimated at from two hundred to four hundred yards. About midway between these points was a switch tower from which the derailing switches were operated. In connection with this were certain "dwarf signals" stationed about six feet from the respective derailing switches, by means of which the operator in the tower indicated to approaching trainmen on track number three whether the switch was open or closed; if closed, the switch target would show "white;" if open it would show "red." Defendant promulgated certain rules, one of which provided that these "dwarf signals" "must never be passed when the switch target shows red." On a day in December, 1909, the plaintiff was operating his engine, drawing several cars, over track number three. He was familiar with the location and object of the "derailing switches" and "dwarf signals," and the manner of operating the latter, and the rule above mentioned, and knew the danger of allowing his engine to enter either of the derailing switches. Going away from Atlanta, on approaching the first derailing switch the target of the dwarf signal displayed "white," and the plaintiff passed over the switch safely, and proceeded along track number three in the direction of the next derailing switch, running his engine at the rate of about fifteen miles an hour. The first dwarf signal having displayed a "white" target,

he assumed that the same target would be displayed at the second, and did not discover what signal the latter target displayed. In fact it displayed "red," and the switch was open, and the engine ran upon it and was derailed, thereby injuring plaintiff. He did not attempt to discover the second signal, giving as his reason therefor that he felt sure it was like the first, and he could not have seen it because. of smoke from an engine running slightly in advance of him on track number one. Nor did he attempt to stop or slacken the speed of his engine, but continued to run at the rate of fifteen miles an hour until he was about to run on the second derailing switch, or, to use his own language, until he was "within six feet" of the switch, at which time he discovered that the switch was open, but it was too late to avoid the catastrophe. He also testified that there were no trains in sight on the Y, and, there being none, there was no necessity for the signal to be operated with the derailing switch open. It was the custom and practice of engineers when they were given a "white" signal at the first switch to proceed "on through" over the second. A witness testified, without objection, that in response to the inquiry why was the switch open the operator in the tower answered, "he had let a back-up on the West Point belt line, and when he let them back on the main line he forgot to close the switch." At the conclusion of the plaintiff's evidence the judge, on motion, granted a nonsuit, and the plaintiff excepted.

*Westmoreland Brothers,* for plaintiff.

*Little & Powell,* for defendant.

ATKINSON, J. The substance of plaintiff's case is fairly set forth in the statement of facts. Treating as true all that is stated, and giving the plaintiff the benefit of all reasonable deductions to be drawn from the evidence, it is clear that his evidence did not present a cause of action. Considering the object and character of the "derailing switches" and "dwarf signals," and defendant's promulgated rule, with which plaintiff was familiar, prohibiting the passing of signals where a red light was displayed, the rule was essential to the safe operation of the defendant's trains at that point, and the plaintiff was under duty to observe it, and knew the danger of disregarding it. He disobeyed it by running his train past the dwarf signal which protected the open switch where the injury occurred. He voluntarily took the risk of what it might

indicate if he had taken the precaution to see. The defendant's directions for plaintiff's conduct under such circumstances were in plain terms, and he deliberately violated the precautions for his safety and that of his employer's property. It was not a case of defect in the instrument and a failure thereof to give a signal. The derailing switch did accomplish what the plaintiff knew it was designed to accomplish, and the signal was present to inform him that it was in position to bring about the result that followed. It was no answer that engineers were accustomed to disobey this rule, or that there were no trains in sight on the Y of the Atlanta & West Point Railroad, or that smoke from another engine might have so covered the track that the plaintiff could not have seen the signal had he attempted to do so. That he did not see it was purely his own negligence, which, under the facts, was the proximate cause of the injury. This is the only legitimate inference to be drawn from the evidence as adduced, and it presents a case where there could not be a recovery, even in view of the enlarged liability of railroad common carriers to their employees under the provisions of the act approved August 16th, 1909. Acts 1909, p. 160, Civil Code, §§ 2782 et seq.

*Judgment affirmed. All the Justices concur.*