### VIRGINIAN RY. CO. v. LINKOUS.

(Circuit Court of Appeals, Fourth Circuit. November 24, 1915.)

#### No. 1379.

1. MASTER AND SERVANT ☞287—ACTIONS FOR INJURIES—QUESTIONS FOR JURY.

    A railway company's rules made conductors and enginemen responsible for the safety of trains with the duty on each of them to take every precaution for their protection, enjoined upon the conductor the duty of enforcing rules applicable to all other employés on the train, made it his duty to take entire charge of all employés thereon, and instructed enginemen to obey the conductors' orders as to starting, stopping, etc. A bulletin notified all employés that, at all stations where a train was required to meet or wait for an opposing train, the engineman would give one short sound of the whistle, and that, if this signal was not given, trainmen would take whatever steps were necessary for safety to prevent the train passing the meeting point. The rules also required the conductor to deliver a copy of the running orders to the engineer, who was required to read them back to the conductor, and required the conductor and engineer to show the order to the brakeman and fireman. An engineer was killed by running by a point where he was ordered to meet another train and colliding with such train. The conductor, fireman, and front brakeman were riding on the engine, but they were also killed in the collision,

and there was no testimony as to what was said or done by them prior to or at the time of the accident. Copies of the train order were found in the pockets of the conductor and engineer. *Held*, that no inference of negligence on the part of the trainmen other than the engineer could be drawn from the facts, and the court erred in submitting their negligence to the jury, as it could not be reasonably inferred that they approved of or assented to the engineer's action in running past the meeting point thereby endangering their lives.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1034, 1045, 1051, 1052, 1054–1067; Dec. Dig. ☜287.]

2. EVIDENCE ☜67—PRESUMPTIONS—CONTINUANCE OF CONDITION.

Where train employés killed in a collision were in the full possession of their mental faculties when last' seen, the presumption was that they were still in a normal condition at the time the accident occurred.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 87, 88, 103; Dec. Dig. ☜67.]

3. MASTER AND SERVANT ☜228—LIABILITY FOR INJURIES—CONTRIBUTORY NEGLIGENCE—STATUTORY PROVISIONS.

Employers' Liability Act April 22, 1908, c. 149, §§ 2, 3, 35 Stat. 65, 66 (Comp. St. 1913, §§ 8658, 8659), make interstate carriers by railroad liable in damages to any employé suffering injury from the negligence of any officers, agents, or employés of such carriers, and provide that contributory negligence shall not bar a recovery, but that the damages shall be diminished in proportion to the amount of negligence attributable to such employé. *Held* that, while this is intended to abolish the fellow-servant doctrine, it is not intended to afford relief where one's injury is due solely to his own reckless and indifferent conduct.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 670, 671; Dec. Dig. ☜228.]

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

Action by Daisy M. Linkous, administratrix of J. M. Linkous, deceased, against the Virginian Railway Company. Judgment for plaintiff, and defendant brings error. Reversed.

H. T. Hall, of Roanoke, Va., and G. A. Wingfield, of Norfolk, Va., for plaintiff in error.

W. L. Welborn and S. H. Hoge, both of Roanoke, Va. (Welborn & Jamison and Hoge, Williams & Darnall, all of Roanoke, Va., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. This action was instituted in the District Court of the United States for the Western District of Virginia by the administratrix of J. M. Linkous, deceased, against the Virginian Railway Company, to recover damages for the death of her intestate.

The plaintiff in error will hereinafter be referred to as defendant, and the defendant in error as plaintiff; such being the respective positions occupied by the parties in the court below.

The plaintiff set forth the grounds of her alleged cause of action in a declaration containing seven counts. The court sustained a demurrer to the second count, the third, fourth, fifth, and seventh

counts were withdrawn by the plaintiff before issue was joined, and the case went to trial upon the first and sixth counts. The jury was instructed that there was not sufficient evidence to sustain a recovery under the sixth count, and we therefore only have to consider the alleged cause of action set up in the first count of the declaration.

[1] This count alleges, in substance, that the negligence of the defendant consisted in the failure of the conductor, fireman, and front brakeman to intervene and prevent the effect of the plaintiff's intestate's failure to stop his train and observe the meet order at Keever. The jury returned a verdict in favor of plaintiff in the sum of $8,541, for which judgment was entered, to which defendant excepted, and the case now comes here on writ of error.

The plaintiff's intestate was the engineer on a coal train on the run from Roanoke to Victoria. This train was designated as "Extra 468," and ran on a contingent schedule under which the train had certain rights. When this train passed Altavista, a point about 23 miles west of Keever (the point near which the accident occurred), both the conductor and engineer received an order to meet and pass No. 33, the local west-bound freight train, at Keever. The local freight No. 33 was a regular train running on a regular schedule, under which it had certain rights. The local freight No. 33 received a similar order at Phenix, a station some distance east of Keever, the meeting point. In the absence of these orders, these trains, under their schedule rights, would have been required to meet and pass at Seneca, a station 6.1 miles west of Keever. The effect of this order was therefore to enable Extra 468 to proceed beyond Seneca, the regular passing point, and go on to Keever.

Extra 468 left Seneca with the engineer, the conductor, the fireman, and the front brakeman riding on the engine. The local freight No. 33 was directed to take the siding at Keever and allow Extra 468 to pass on the main line.

Under the orders issued, Extra 468 had no right to proceed beyond the east switch at Keever, unless the local No. 33 was in the clear on the siding at Keever. The testimony shows that no effort was made to stop No. 468 at Keever, and that it proceeded beyond the east switch, the engine working under steam to a point variously estimated from 1,500 to 2,500 feet east of the east switch at Keever, where it collided with the local No. 33. The engineer, fireman, and front brakeman on local No. 33 observed Extra 468 approaching at a distance of from 1,000 to 1,200 feet away. The engineer on No. 33 shut off steam, put on the emergency brake, and blew the stop signal. They then, seeing that a collision was imminent, jumped from their train and escaped uninjured.

It appears that engine No. 468 continued working steam up to the point of the collision, and there was no effort, so far as the testimony discloses, on the part of the plaintiff's intestate to stop his train. The four members of the crew of Extra 468 who were on the engine at the time of the collision were all instantly killed. The train orders under which Extra 468 was required to pass local No. 33 were found on the persons of plaintiff's intestate and the conductor of

Extra 468 when their bodies were removed from the wreck caused by the collision. There is no explanation in the testimony of how or why the plaintiff's intestate and other members of the crew of Extra 468 disregarded the meet order at Keever.

The material sections of the Employers' Liability Act, in pursuance of which this suit was instituted, are as follows:

"Sec. 2. Every common carrier by railroad [engaging in commerce between any of the several states] shall be liable in damages to any person suffering injury while he is employed by such carrier [in such commerce] for such injury * * * resulting in whole or in part from the negligence of any * * * officers, agents, or employés of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its * * * engines, appliances, machinery, etc.

"Sec. 3. In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this act to recover damages for personal injuries to an employé, * * * the fact that the employé may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé."

It will be observed that, while one is employed by a carrier engaged in interstate commerce, such carrier shall be liable in damages for any injury which may be sustained "resulting in whole or in part from the negligence of any of the officers, agents or employés of such carrier." It was intended by this provision to abolish what was known at common law as the "Fellow-Servant Doctrine." The statute is based on the idea that where one is injured by the negligence of the carrier he shall not be denied the right of recovery even though it appear that he contributed in a measure to his own injury; but it is provided that "the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employé."

It is insisted by counsel for plaintiff in the case at bar that plaintiff's decedent lost his life "as a result of a combined mutual, concurring, and joint failure of these four men to fulfill their primary duty by executing the order to meet No. 33 according to its terms and as prescribed by the defendant's rules, which was the controlling and proximate cause of the collision."

In support of this contention it was shown that rule 105 provides that conductors and enginemen are to be responsible for the safety of trains, and that under conditions not provided for by the rules that each of them must take every precaution for their protection; that rule 451 enjoins upon the conductor the duty of enforcing rules applicable to all other employés on the train and to report any insubordination, misconduct, or neglect of such duty; that rule 457 provides that it shall be the duty of the conductor to take entire charge of all employés on such train until the same is finally set off from the main track at the terminal station; that rule 701 is in the nature of an instruction to enginemen to obey the orders of the conductors as to starting, stopping, switching cars, speed and general management of the train, unless such orders endanger the safety of the train or would require the violation of the rules or cause injury to company property; also, that bulletin No. 1082, dated September 7, 1911, contains the following language:

"All Concerned:

"At all stations where a train is required by the rules or train order to meet or wait for an opposing train the engineman will give one short sound of the whistle, immediately after whistling for the station.

"In event of failure on the part of the engineman to give the prescribed signal, trainmen will take whatever steps are necessary for safety to prevent the train from passing the station.                  George Reith, Superintendent."

At the trial the court below gave the following instructions to the jury bearing upon the question as to whether the plaintiff, under the circumstances, was entitled to recover:

"The court instructs the jury that negligence is the failure to use ordinary care to perform a duty, that negligence may be proved by circumstantial evidence, and that you are at liberty to draw reasonable inference from the facts in evidence.

"The plaintiff cannot recover if the evidence shows only that the collision may have resulted from one of several causes for some of which the defendant is not liable; but, if you believe from the evidence that negligence on the part of the employés in the engine is the only reasonable inference to be drawn from the facts in evidence, you may find for the plaintiff."

Thus it will be seen that the court below submitted to the jury the question as to whether the evidence was such as to justify them in drawing the inference that the death of plaintiff's decedent was in part due to the negligence of the other employés on the engine. This brings the point in controversy within a narrow compass, to wit, was there evidence from which the jury might reasonably infer that the death of plaintiff's decedent resulted in whole or in part from the negligence of the officers, agents, or other employés of the defendants?

Save the fact that they were on the engine at the time plaintiff's decedent was killed, there is not a word of testimony as to what was said or done by the other employés prior to or at the time of the accident. Therefore it could only be by inference, if at all, that the jury might form any opinion as to what actually transpired in so far as the conduct of the other employés is concerned. Under these circumstances, what is the reasonable inference to be drawn therefrom? Could it be reasonably inferred that the conductor or any other employé on the engine approved of or assented to the action of the engineer in running his engine past the station in utter disregard of the orders under which he was operating? Would it not be more reasonable to infer that the conductor and other employés did not consent to the train being carried by the station, but rather protested against the action of the engineer for the purpose of saving their own lives, if for no other cause.

[2] When last seen, the engineer and the other employés were in the full possession of their mental faculties in so far as the record shows, and therefore the presumption is that they were still in a normal condition at the time the collision occurred, and if this be true it would be repugnant to reason to say that they acquiesced in a course of conduct by the engineer which they must have known would necessarily result in disaster.

Therefore, if this be the correct inference to be drawn from the testimony, the plaintiff's decedent did not lose his life on account of the

negligence of the officers, agents, or employés of the defendant, and therefore the plaintiff would not be entitled to recover.

Under the rules of the company, it was the duty of the conductor to deliver a copy of the order to the engineer, who, in turn, was required to read the same back to the conductor. The rules further require that such order must be shown by the conductor and engineer to their brakeman and fireman, and as evidence that this rule was complied with on this occasion copies of the train order were found in the pockets of the conductor and engineer after the accident occurred.

While, as contended by plaintiff, it is, in certain emergencies, the duty of the conductor, fireman, or brakeman to use all means within their power to stop the train, nevertheless it should be borne in mind that in the first instance it is the positive and primary duty of the engineer to stop the train in obedience to train orders. Notwithstanding the fact that such is the case, this unfortunate engineer, for some inscrutable reason in utter disregard of the danger to his own life, as well as the lives of others, deliberately ignored his train orders, and as a result a catastrophe occurred by which all were sent into eternity without a moment's warning.

[3] While the Employers' Liability Act was manifestly intended to modify the law as it formerly existed so as to materially benefit those who might be injured in the future, by abolishing the harsh rule known as the "Fellow-Servant Doctrine," yet it cannot be reasonably insisted that it was the purpose of the act to afford relief where one's injury is due solely to his own reckless and indifferent conduct.

After an exhaustive examination of the authorities cited we find nothing to support the contentions of the plaintiff.

Under the circumstances the jury could not reasonably have drawn any other inference than that the other employés were not in any degree primarily responsible for the accident. Such being the case, we are of opinion that the jury was not warranted in reaching the conclusion that plaintiff's decedent's death resulted in whole or in part from the negligence of the employés of the defendant.

From what we have said, it follows that the court below erred in refusing to grant the motion to direct a verdict in favor of the defendant.

For the reasons stated, the judgment of the lower court is reversed.