## VIRGINIAN RY. CO. v. LINKOUS.

(Circuit Court of Appeals, Fourth Circuit. July 8, 1916.)

### No. 1379.

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

On rehearing. Former opinion (230 Fed. 88, 144 C. C. A. 386), reversing judgment below, adhered to.

H. T. Hall, of Roanoke, Va., and G. A. Wingfield, of Norfolk, Va., for plaintiff in error.

W. L. Welborn and S. H. Hoge, both of Roanoke, Va. (Welborn & Jamison and Hoge, Williams & Darnall, all of Roanoke, Va., on the brief), for defendant in error.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

PRITCHARD, Circuit Judge. The above-entitled cause was decided at the November term, 1915, of this court, the court holding that the defendant in error, under the circumstances, was not entitled to recover. A petition for rehearing was presented December 25, 1915, and the case was reargued at this term.

Having fully discussed the question as to whether the injury of the defendant in error was due in whole or in part to the negligence of a fellow servant, in the opinion heretofore announced, we do not now deem it necessary to enter into a further discussion of that phase of the case. After a careful consideration of the contention of counsel for defendant in error, as well as the authorities cited, we think that the decision of this court in the first instance was correct.

Therefore we adhere to our former opinion, reversing the lower court.

WOODS, Circuit Judge (dissenting). In this action, brought under the federal Employers' Liability Statute (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]), the plaintiff recovered judgment on account of the death of her husband, J. M. Linkous, an engineer on one of the defendant company's trains. The negligence of the engineer was admitted, and the sole question is whether the Dis-

trict Court should have directed a verdict for the defendant on the ground that there was no proof of negligence of the other servants of the defendant contributing as a proximate cause to the death of the decedent.

There is practically no dispute as to the facts. When extra train No. 468, on which Linkous was engineer, reached the station Alta Vista, copies of a written telegraph order to meet and pass another freight train, No. 33, at the station Keever, were given to the conductor and the engineer. The order was in plain language, not easily misunderstood, and the surviving brakeman testified that he and the conductor spoke to each other of the order to pass No. 33 at Keever. The presumption is that the conductor and the engineer, in accordance with the rules of the company, showed or made known the order to the brakeman and fireman. Looney v. Metropolitan Railroad Co., 200 U. S. 480, 26 Sup. Ct. 303, 50 L. Ed. 564.

After receiving the order, the conductor and one brakeman got on the engine with the engineer and fireman, leaving one brakeman in the shanty car at the rear end of the train. The order to stop at Keever was disregarded; there was a head-on collision with No. 33 about 2,500 feet beyond the east end of the switch where No. 468 should have been stopped; and the four men on the engine were instantly killed. Copies of the order were found on the bodies of the conductor and engineer.

A number of rules of the Railroad Company were introduced, but these seem to be chiefly relied on by the plaintiff:

### "Instructions to Conductors and Enginemen:

"Rule 105. Both conductors and enginemen are responsible for the safety of their trains, and, under conditions not provided for by the rules, must take every precaution for their protection."

### "Instructions to Conductors:

"Rule 451. Enforce the rules applicable to all other employés on the train, reporting any insubordination, misconduct, or neglect of duty.

"Rule 457. When assigned to a train, take entire charge of it and of all persons employed thereon, until it is finally set off from the main track at the terminal station."

### "Instructions to Enginemen:

"Rule 701. Obey orders of the conductor as to starting, stopping, switching cars, speed and general management of train, unless such orders endanger the safety of the train or would require the violation of the rules or cause injury to company property."

The following bulletin was issued by the superintendent:

### "All Concerned:

"At all stations where a train is required by the rules or train order to meet or wait for an opposing train, the engineman will give one short sound of the whistle immediately after whistling for the station.

"In event of failure on the part of the engineman to give the prescribed signal, trainmen will take whatever steps are necessary to prevent the train from passing the station."

From this statement it is evident that the four men on the engine knew of the order to stop at the east end of the switch at Keever,

and that it was the duty of all of them to be on the lookout for the stopping place. They knew in abundant time to stop the train and avoid the collision that the stop ordered had not been made. They knew before reaching Keever of the failure to slow down in proper time, and that the train was going by. All of them well knew, as reasonable men, of the almost certain death which would result from disregard of the order. There is no living witness of what took place on the engine or of the reason for going by, but it is impossible to believe that the train would not have been stopped had any one of the four men remembered the order. None but a mad engineer would have gone on had he been reminded of the order, and none but a mad conductor, brakeman, or fireman would have allowed him to go on had the order been remembered. Memory and attention fail much more readily and frequently than the instinct of self-preservation in the presence of imminent peril. I cannot think it is going into the field of conjecture to say that the most reasonable, if not the only, explanation of the accident is that the four men, engaging each other in conversation, or having their attention otherwise diverted, forgot the order, or were inadvertent to it. It is unbelievable that they would not have united in the common purpose to stop the train had any one of them thought of the order. It seems perfectly evident, then, that had any one of them been advertent to his duty, the accident would not have happened. Looked at in this way, the case is precisely one which the statute was designed to meet, in that the death of the engineer resulted in part from the negligence of the other employés of the defendant in being inadvertent to their duty.

The case is peculiarly strong, and different from any which has been cited, and any which we have been able to find, in that the conductor, the representative of the master in charge of the train, was on the engine, standing by the side of the engineer, and that a touch or word from him would undoubtedly have stopped the train in obedience to the order given to him. I cannot resist the conclusion that to hold that the duty of the engineer was primary, and that of the other trainmen only secondary, while they were standing side by side, all under the same duty to stop the train, and when any one of them could and would have stopped it but for the forgetfulness of duty in which all participated, is to hold the engineer alone responsible for the breach of duty and failure of memory of all.

Review of the numerous cases on the subject would not be enlightening. The principles upon which the cases rest are well established. The difference is in their application. The following cases state the principle involved, but an examination of them will show that in its facts this case is different from all of them: Seaboard Air Line Railway v. James T. Horton, 239 U. S. 595, 36 Sup. Ct. 180, 60 L. Ed. 458; Illinois Central R. R. Co. v. Fulton M. Skaggs, 240 U. S. 66, 36 Sup. Ct. 249, 60 L. Ed. 528; Great Northern Railway Co. v. Wiles, Administrator, 240 U. S. 444, 36 Sup. Ct. 406, 60 L. Ed. 732; Pennsylvania Railroad Co. v. Goughnour, 208 Fed. 961, 126 C. C. A. 39; Smith v. Atlantic Coast Line R. R. Co., 210 Fed. 761, 127 C. C. A. 311; New York C. & St. L. R. R. Co. v. Niebel, 214 Fed. 952, 131 C. C.

A. 248; Norfolk Co. v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172; Grand Trunk Co. v. Lindsey, 233 U. S. 42, 34 Sup. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168; Central R. R. Co. of New Jersey v. Young, 200 Fed. 359, 118 C. C. A. 465; Tidwell v. Central of Georgia Railway Co., 140 Ga. 250, 78 S. E. 898; Kendrick v. Chicago R. R. Co., 188 Ill. App. 172.

The case of Spokane Railroad Co. v. Campbell, 241 U. S. 497, 36 Sup. Ct. 683, 60 L. Ed. 1125, decided June 12, 1916, is analogous, and upholds the right of the plaintiff to recover in this action. The plaintiff, Campbell, was an engineer injured by collision with another train. The jury found a special verdict: (1) That the plaintiff ran his train, which was a special, out of the terminus, Cour d'Alene, in violation of an order which required him to await the arrival of regular train No. 20; (2) that the air brakes on Campbell's train immediately before the collision were insufficient to enable him to control the speed of the train; (3) that Campbell's leaving Cour d'Alene in violation of his orders was the proximate cause of the accident. The court, nevertheless, sustained a verdict against the railroad company, using this language:

"It is said that, conceding the power-brake provision applies to electric trains, the duty imposed was not owed to Campbell under the special circumstances established by the jury's findings. The argument is that the purpose of the brake requirements is to place control of the train in the hands of the engineer, so that the safety of passengers and employés may be conserved, not that the engineer should be able to escape injury from peril to which he had wrongfully exposed himself, and that Campbell cannot bring himself within the class intended to be protected by pointing out that the situation created by his disobedience of orders was one that Congress contemplated as possible and the consequences of which it desired to guard against. This gives altogether too narrow a meaning to the Safety Appliance Act, and is inconsistent with the provisions of the Employers' Liability Act, as we shall see."

The conclusion of the court was that the defect in the brake and the engineer's violation of the order were concurring proximate causes of the accident, and the engineer was therefore entitled to recover. In this case the forgetfulness of the conductor was an act of negligence, concurring with that of the engineer, without which the accident would not have happened.

For these reasons I think that the judgment of the District Court should be affirmed.