(104 So. 397)

**DAVIS, Agent, v. SORRELL. (6 Div. 239.)**

(Supreme Court of Alabama. April 9, 1925. Rehearing Denied May 21, 1925.)

**1. Evidence ⬅514(3)—Testimony of experienced railroad men as to duty of foreman of shop engine crew, competent.**

In action for death of switchman, testimony of experienced railroad men, as to duty of shop engine crew foreman to see that cars on track were left in clear for switch movements, was competent.

**2. Negligence ⬅101—Contributory negligence merely mitigates damages under federal Employers' Liability Act.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), cause of action is established if injury resulted in whole or in part from defendant's negligence, and contributory negligence may be considered in mitigation of damages only, and is not a bar.

**3. Master and servant ⬅228(1)—Primary duty of switchman to see cars were left in clear.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), for death of switchman by being crushed in collision between train on which he was riding and cars which he had switched to adjacent track, held such switchman had primary duty to see that cars were left in the clear, and duty of foreman of crew was only secondary, so that foreman's negligence was not a basis for recovery.

**4. Master and servant ⬅286(33) — Whether switchman's death was caused by negligent moving of cars held for jury.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), for death of switchman of shop engine crew, engaged in switching on dark and rainy night, negligence, in that railroad may have moved cars which collided with that on which deceased was riding, held for jury under evidence.

**5. Master and servant ⬅296(10) — Charge switchman had duty to see cars left on one track were clear of those on another properly refused.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), for death of switchman, caused by being crushed between cars in switching movement, charge that it was duty of deceased to see that cars left on the one track were clear of those passing into or on another track was properly refused, as he had duty only to see that cars left by him were clear.

**6. Master and servant ⬅296(10) — Charge switchman had duty to see cars left by him on one track were clear of those on another improperly refused.**

In action under federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665), for death of switchman, caused by being crushed between cars in switching movement, charge imposing duty on deceased to see that cars left by him on one track were clear of cars passing into or on another improperly refused.

**7. Master and servant ⬅262(3)—Pleas of assumption of risk being only pleas of contributory negligence demurrable.**

Pleas in bar, purporting to set up assumption of risk by employé within federal Employers' Liability Act (U. S. Comp. St §§ 8657–8665), but in fact only pleading contributory negligence, were demurrable.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
[1] 212 Ala. 206.

**8. Appeal and error ⬦1040(14) — Whether plea of contributory negligencé was improperly overruled not considered, where defendant received benefit under another plea.**

Where defendant received full benefit of defense of contributory negligence, error in overruling plea of contributory negligence will not be reviewed.

Appeal from Circuit Court, Jefferson County; Romaine Boyd, Judge.

Action for damages by Blanche Sorrell, as administratrix of the estate of W. T. Sorrell, deceased, against James C. Davis, as Agent, under the Transportation Act (41 Stat. U. S. 456), operating the Southern Railway Company's lines. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Plea 2 (to which pleas 3, 4, and 5 are similar) is,as follows:

"For further plea and answer defendant says, that the deceased was employed as a switchman, and it was his duty as such to direct the 'placing of the cars a sufficient distance from the switches to clear the other track when cars were being moved over, the same, and deceased directed, by means of signals, the placing of a cut of cars on defendant's side track No. 2, in the vicinity of Woodlawn, and therefore knew the position of said cars on said side track, and with such knowledge, after throwing the switch for track No. 1, he hung onto a freight car and directed its movements upon track No. 1, when said cut of cars so placed by the deceased was not a sufficient distance from track No. 1 or from said freight car upon which he was riding to clear the same, and he was thereby struck on account of the car on which he was riding side-swiping said cut of cars, and hence defendants say that deceased assumed the risk of being injured."

The following charges were refused to defendant and made the bases of assignments 16, 17, 18, 22, 23, 26, 34, 35, and 38:

(16) "18. The court charges the jury that they cannot find for the plaintiff on account of any negligence of Foreman Mitchell."

(17) "29. The court charges the jury that under the evidence in this case you cannot find for the plaintiff because the cars on No. 2 track were moved or shoved eastward after they were left on that track by the crew."

(18) "30. The court charges the jury that if you believe the evidence in this case you cannot find for the plaintiff on account of any moving of the cars left on No. 2 track eastward."

(22) "25. The court charges the jury that if you are reasonably satisfied from the evidence in this case that the cut of cars on track No. 2 at the east end thereof was not left in the clear of cars passing into or on track No. 1, then your verdict should be for the defendant."

(23) "14. The court charges the jury that they are not authorized to find from the evidence that the car after having been placed on track No. 2 was shoved further east by any

engine or tràin so as not to · clear the' cars passing,into or on No. 1 track."

(26) "21. The court charges the jury that under the evidence in this case that there was no duty as to deceased on the part of Foreman Mitchell to exercise care to see that the cars on No. 2 track were a sufficient distance from track No. 1 to clear cars moving on or into track No. 1."

(34) "19. The court charges the jury that if they find from the evidence that deceased signaled the engineer to stop the cars on No. 2 track before they were shoved a sufficient distance on that track to clear the cars passing into or on track No. 1, and that the accident was caused solely on account of the cars on No. 2 track not being placed a sufficient distance to clear the cars passing into or on No. 1 track, they will find for the defendant."

(35) "23. The court charges the jury that if they find from the evidence that Foreman Mitchell directed the deceased to shove cars in on No. 2 track, and cut off all the cars on that track except the two next to the engine, and then shove these two cars attached to the engine in on No. 1 track, and that after giving these directions Foreman Mitchell went on down the track in the performance of other duties, and was not present when the engine and the two cars were cut off the cut of cars on No. 2 track, then Foreman Mitchell violated no duty which he owed to the deceased in failing to remain at the point where the cars were to be cut off on track No. 2 and left in the clear of track No. 1."

(38) "H. The court charges the jury that if you are reasonably satisfied from the evidence in this case, that the cars on track No. 2 were not moved between the time deceased directed their being placed thereon and the time of the injury to deceased, then your verdict must be for the defendant."

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellant.

The master is not required to guard and protect his servants from their own negligence and carelessness. Dixon v. Union Iron Works, 90 Minn. 492, 97 N. W. 377; North Birmingham Ry. v. Wright, 130 Ala. 419, 30 So. 360. No recovery can be had for a failure of an employé to perform a duty entrusted to him. Maddox v. Chilton Co., 171 Ala. 216, 55 So. 93; Warrior Co. v. Thompson, 193 Ala. 639, 69 So. 76. Nor where the employé's negligence is the sole proximate cause of injury. 2 Roberts, Fed. Liab. of Car. 1322. The foreman owes no duty to a fellow employé to see that he performs his duty. Va. Ry. v. Linkous, 230 F. 89, 144 C. C. A. 386; Penn. R. Co. v. Goughnour, 208 F. 961, '126 C. C. A. 39; Great Northern v. Wiles, 240 U. S. 444, 36 S. Ct. 406, 60 L. Ed. 732; Davis v. Kennedy, 266 U. S. 147, 45 S. Ct. 33, 69 L. Ed. 212.

W. A. Denson and S. R. Hartley, both of Birmingham, for appellee.

Under the federal Employers' Liability Act an employé does not agree to assume the

---

risks of negligence of fellow servants. Portland Term. Co. v. Jarvis, 227 F. 8, 141 C. C. A. 562; Sweet v. C. & N. W., 157 Wis. 400, 147 N. W. 1054; Hawkins v. St. L. & S. F., 189 Mo. App. 201, 174 S. W. 129; Thornton v. S. A. L., 98 S. C. 348, 82 S. E. 433; Watson v. St. L., I. M. & S. (C. C.) 169 F. 950. The master is liable for injuries caused in whole or in part by negligence of a coemployé L. & N. v. Fleming, 194 Ala. 51, 69 So. 125; Southern v. Fisher, 199 Ala. 377, 74 So. 580; L. & N. v. Porter, 205 Ala. 131, 87 So. 288. Injury must be due solely to one's own negligence to prevent recovery. Authement v. L. W. R. Co., 147 La. 816, 86 So. 215; Thornhill v. Davis, 121 S. C. 49, 113 S. E. 370, 24 A. L. R. 617. A conductor or foreman of a train crew is a coemployé of a brakeman, and, if negligence of the former contributes to the injury of a brakeman, the brakeman may recover. Koofos v. Great Northern, 41 N. D. 176, 170 N. W. 859.

GARDNER, J. This is an appeal from a judgment recovered by appellee, as administratrix of the estate of W. T. Sorrell, deceased, against appellant, in an action under the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665). No question is presented as to due proof of dependency, earnings of the plaintiff's intestate, and amount of recovery, nor was it controverted that at the time the fatal injuries were received, the deceased employé was engaged in work of such interstate character as to bring the case within the influence of the federal act. The cause was submitted to the jury on count 3, the general issue joined thereon, and plea of contributory negligence in mitigation of the damages.

The accident occurred about 9 o'clock on the night of January 22, 1920, while deceased (hereinafter referred to as Sorrell) was employed by defendant as a switchman in the yards at Birmingham. Sorrell was a member of the shop engine crew, being known as the head brakeman, and his duties required that he work next to the engine. The crew consisted also of a foreman, one Mitchell, fireman, engineer, and a rear switchman or field man; a Mr. Ray held the latter position. The crew had brought a "cut of cars" that were in good condition out of the Avondale shops, and carried them eastward to the Woodlawn yard, where was located the double track of the Alabama Great Southern Railroad, to the south of which were the two main line tracks of the Southern Railway. Immediately south of these two latter tracks were yard tracks known as tracks Nos. 3, 2, and 1, beginning with track No. 3 and going south. These yard tracks were connected at the east and west ends with the Southern main line tracks by lead tracks for switching purposes. A detailed statement of the switching operation and purposes thereof is not essential to any questions here presented, and the salient facts immediately preceding the accident may be summarized as follows: It became necessary to take from track No. 1 a cut of cars and place a portion of them on track No. 2. This was done, and the train backed out of track No. 2 with two cars, which were again to be run into track No. 1. After having backed the two cars out of track No. 2, Sorrell threw the switch, and gave the signal for running these two cars back into track No. 1. The second car from the engine was a steel car, and the end car left standing on track No. 2, which Sorrell had just uncoupled, was a wooden car, and Sorrell was riding on the front end of the steel car as the two cars were being pushed into track No. 1. In thus going into track No. 1, the steel car, on which Sorrell was riding, "side-swiped" with the wooden car above referred to, left standing on track No. 2, with the result that Sorrell was crushed to such an extent as that he died within a few hours after the accident. The proof shows also that the night was dark, and it was raining. At the time of the accident, Ray, the "field man," was at the opposite end to the cut of cars on track No. 2 to see that the cars on that track were not pushed so far as to interfere with the lead track on that end. Mitchell, the foreman, to whose orders the crew was subject, after giving directions to Sorrell to do this switching, and before the switching operations were begun, left him and went down into the yard, and had gotten "about 10 to 12 car lengths down the main line," when he heard the cars collide. Sorrell was a man of many years' experience, having served as conductor, switchman, and brakeman, though he had worked on this particular job in that place only a short time. Photographs were taken of the two cars that collided just as they were left standing after the accident, and these were introduced in evidence, and form a part of this record.

Plaintiff insists these photographs show the cars did not strike at the ends, and support her theory that the wooden car on track No. 2 moved eastward after being uncoupled by Sorrell, and, in further support of this theory, offered the evidence of one Owen who testified that he was in the yards, and near the scene of the accident at the time the cars collided, standing in the shade of a cut of cars that were "bumped into" and made to move eastward, the direction of the accident. This witness further stated that just following this movement, and hearing the crash, he walked to where Sorrell was lying injured.

[1] Plaintiff rests her right of recovery upon two theories, the first being that it was the duty of Mitchell, the foreman, also to

see that the cars left in No. 2 track were left in the clear, and that he should have aided Sorrell in this respect, especially in view of the fact that the night was dark and raining; that therefore Mitchell was to that extent guilty of negligence contributing to the accident. In support of this theory plaintiff offered the testimony of witnesses Clark, Elliott, and McCormack, to the effect that in this switching movement it was the duty of Mitchell, the foreman, to supervise the same, and see to it that the cars on track No. 2 were left in the clear. Defendant's objection to this proof was overruled. These witnesses were experienced railroad men, and experienced in that character of work, and we are of the opinion the evidence was competent. Sloss-Sheffield Steel & Iron Co. v. Green, 159 Ala. 178, 49 So. 301.

The defense rested upon the theory that the work of Sorrell as head brakeman required him to perform all switching duties as to this particular operation, and that, as he gave the signals, coupled and uncoupled the cars, the responsibility rested entirely upon his shoulders, and the accident was solely the result of his own negligence in failing to see that the cars left on No. 2 track were not in the clear.

[2] The rule is well established that, under the federal Employers' Liability Act, if the injury resulted "in whole or in part" from defendant's negligence, the cause of action is established, and that contributory negligence on the part of the employé is not a bar to recovery, but to be considered in mitigation of damages only." Plaintiff's negligence, contributing with defendant's negligence, in the production of the injury, does not defeat the cause of action, but only lessens the damages. Grand Trunk R. R. Co. v. Lindsay, 233 U. S. 42, 34 S. Ct. 581, 58 L. Ed. 838, Ann. Cas. 1914C, 168; Southern Ry. v. Peters, 194 Ala. 94, 69 So. 611; Authement v. L. W. Ry. Co., 147 La. 816, 86 So. 215; Illinois Cent. R. R. Co. v. Skaggs, 240 U. S. 66, 36 S. Ct. 249, 60 L. Ed. 528.

[3] But very clearly the primary duty rested upon Sorrell to see that the cars he left on track No. 2 were left in the clear. He was the one who gave the signals and uncoupled the cars in this switching operation. There was nothing "intricate" in this operation, the darkness of the night doubtless requiring greater care, but there is nothing to show it could not have been done by Sorrell alone, who was a railroad man of many years' experience. The duty of the foreman was that of general supervision, as manifestly it would be impracticable that he personally see each actual operation of the various members of the crew, and upon giving Sorrell, the head brakeman, orders for this switching operation, we think he had a right to assume that Sorrell would do his duty. Penn. R.

Co. v. Goughnour, 208 F. 961, 126 C. C. A. 39. As to this switching operation, therefore, Sorrell's duty was primary, while the foreman bore to it a secondary relation.

The case of Va. Ry. Co. v. Linkous, 230 F. 88, 144 C. C. A. 386 (again considered 235 F. 49, 148 C. C. A. 543), is very much in point as supporting appellant's contention as to this particular theory of recovery. This latter authority finds full support in the very recent case from the United States Supreme Court, of James C. Davis, Agent, v. May Kennedy, Adm'x, 266 U. S. 147, 45 S. Ct. 33, 69 L. Ed. 212. There, recovery was sought for the death of David Kennedy, the engineer of train No. 4 that collided with train No. 1, which latter train had the right of way, and for which it was Kennedy's duty to keep a lookout. Speaking to the situation thus presented, the action being under the federal Employers' Liability Act, the court said:

"The trial was in a court of the state of Tennessee, and the plaintiff got a judgment which was sustained by the Supreme Court of the state on the ground that the other members of the crew as well as the engineer were bound to look out for the approaching train and that their negligence contributed as a proximate cause to the engineer's death. We are of opinion that this was error. It was the personal duty of the engineer positively to ascertain whether the other train had passed. His duty was primary as he had physical control of No. 4, and was managing its course. It seems to us a perversion of the statute to allow his representative to recover for an injury directly due to his failure to act as required on the ground that possibly it might have been prevented if those in secondary relation to the movement had done more. Frese v. Chicago, Burlington & Quincy R. R. Co., 263 U. S. 1, 3, 44 S. Ct. 1, 68 L. Ed. 131."

So, in the instant case, Sorrell was in charge and control of this switching operation, and to see that it was properly done was his primary duty, and we consider the Kennedy Case, supra, as here directly applicable and controlling. While of course the federal authorities are binding and conclusive here, we may note in passing that the case of Authement v. L. W. Ry. Co., supra, relied upon by counsel for appellee, is readily distinguishable, as in that case the brakeman left the cars just where the conductor, whose orders the brakeman had to obey, ordered him to leave them, though the brakeman had expressed doubt that they were in the clear. We are therefore of the opinion plaintiff was not entitled to recover upon the theory of negligence on the part of the foreman, Mitchell, and that reversible error was committed in refusing the charges to this effect, which constitute assignments of error 16, 22, 26, 34, and 35.

[4] Plaintiff's second theory for recovery rested upon proof tending to show that the cars left on No. 2 track were "bumped" into

and moved against the car on which Sorrell was riding. The jury could reasonably infer from the photographs in evidence that the wooden car on track No. 2 did not strike the end of the steel car, but some several feet below the end, which is to be considered in connection with the location of the tracks, as they appear therein, and as testified to.

While the testimony of witness Owen was indefinite and unsatisfactory as to the track upon which was located the cut of cars that he states were "bumped into" from the west end, yet, in view of all of his evidence, a portion of which has heretofore been referred to, we are of the opinion it was for the jury to infer therefrom that his testimony related to track No. 2.

In view of these facts and circumstances, in connection with the photographs in evidence, we think it was a jury question as to whether in fact the cars on track No. 2 were made to move eastward at the time of this accident. Ray, the field man, was at the west end of No. 2 track, knew of this switching operation, and was there to see the cut of cars were not pushed too far on that end. If, therefore, these cars were "bumped" on that end to such an extent as indicated, we are further of the opinion the jury could infer negligence on the part of Ray in so permitting this to be done at this particular time, and under the circumstances then existing. It results, therefore, as our conclusion, that those assignments of error resting upon the refusal of charges based upon the assumption no recovery could be had upon the theory of any negligence on defendant's part as to the movement of the cars on track No. 2, are without merit. Particular reference is made to assignments 17, 18, and 23.

[5] The refusal of charge 26 constitutes assignment of error 15. Counsel for appellant argued this assignment upon the assumption that the charge instructed the jury it was Sorrell's duty to see that any cars left by him at the east end of track No. 2 were clear. But this is not the language of the charge, which reads as follows:

"The court charges the jury that under the evidence in this case it was the duty of the deceased to see that any cars left at the east end of track No. 2 were clear of cars passing into or on track No. 1."

It appears, therefore, under the verbiage of this charge, the duty of seeing that cars on track No. 2 were in the clear was placed upon Sorrell whether they were left by him in the clear or not. As thus worded, the charge was properly refused.

[6] What has been previously herein stated indicates our conclusion that charge H (assignment of error 38) refused to defendant should have been given.

[7] Pleas 2, 3, 4, and 5 were pleas in bar purporting to be pleas of assumption of risk. We construe these pleas as being only pleas of contributory negligence and not assumption of risk, and the demurrer was properly sustained thereto. L. & N. R. R. Co. v. Morrill, 211 Ala. 39, 99 So. 297; Southern Ry. Co. v. Chestnut, 210 Ala. 282, 97 So. 905; L. & N. R. R. Co. v. Fleming, 194 Ala. 51, 69 So. 125; Authement v. L. W. R. Co., supra.

[8] Under plea 6 defendant received the full benefit of the defense of contributory negligence, and whether the demurrer to amended pleas 4a and 5b should have been overruled as being sufficient plea of contributory negligence, we need not stop to consider, in view of the fact that defendant received the benefit thereof in plea 6.

For the errors indicated, let the judgment be reversed and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.